Gregg Roberts
43430 E Florida Ave Ste #F-293
Hemet CA 92544
951-330-4450
gregg@legalsupport-sc.com
Assignee of Record and Judgment Creditor, Pro Se

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

|  |  |
|---|---|
| In re Jihad Saker,<br><br>Debtor | Case No.: 6:23-bk-10976-SY<br>Chapter 7<br><br>**NOTICE OF MOTION AND MOTION FOR DISMISSAL; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF**<br><br>Date/Time: June 8 at 9:30 AM<br>Courtroom: 302<br>Judge: Hon. Scott Yun<br>United States Courthouse<br>3420 Twelfth Street<br>Riverside, CA 92501-3819<br><br>[Filed Concurrently with Declaration of Gregg Roberts, and Proposed Order] |

TO: Judgment Debtor Jihad Saker, Counsel therefor, and this Honorable Court:

PLEASE TAKE NOTICE that on June 8 at 9:30 AM or as soon as the matter may be

heard in the Courtroom of the Honorable Scott Yun, 3420 Twelfth Street, Suite 345 /

MOTION FOR DISMISSAL

1

Courtroom 302, Riverside, CA 92501-3819, Assignee of Record/Judgment Creditor Gregg

Roberts ("Roberts") will and hereby does move this Court to dismiss the instant bankruptcy

proceeding.

This Motion is based upon the accompanying summary, Memorandum of Points and

Authorities with all exhibits and attachments, documentation contained in the record, the

Declaration of Gregg Roberts, and upon such further oral and documentary evidence as may be

presented to the Court at or prior to the hearing on this Motion.

This Motion is being made pursuant to Local Bankruptcy Rules (LBR) 9013 and 9014,

and all legal citations included herein. If the responsive party desires to respond to the motion, a

written opposition must be filed with the Court and served upon the Movant whose name and

address appear in the upper-left corner of this Motion no later than 14 days prior to the date set

for hearing on this Motion pursuant to LBR 9013-1(f).

Failure to timely oppose this Motion may be deemed consent to the granting or denial of

the motion. LBR 9013-1(h) .

DATED: May 9, 2023.

Respectfully submitted,

*Gregg Roberts*

Gregg Roberts, Assignee of Record / Judgment Creditor

---

**Table of Contents**

A.  FACTUAL BACKGROUND ..................................................................................4

B.  Unclean Hands and Bad Faith.................................................................. 13

    1.  Deceptive, Disorganized, and Contemptuously Dilatory Document Production..... 13

    2.  Destroying the Value of Saker's Own Company in Violation of Court Order ........ 13

    3.  Public Policy and Judicial Efficiency Support Granting the Motion....................... 14

    4.  Several Misstatements of Fact in the Petition ......................................................... 17

    5.  Conclusion....................................................................................................... 21

C.  AUTHORITIES IN SUPPORT.................................................................. 22

    1.  Cause for dismissal under 11 USC 707(a) is not restricted to unreasonable prejudicial delay occurring **postpetition** ....................................................................... 22

    2.  Equity Is in Play; That, and Several Maxims of Jurisprudence Weigh in Favor of Roberts' Motion ..................................................................................................... 23

    3.  Unclean Hands .................................................................................................. 26

D.  CONCLUSION ............................................................................................. 28

**Table of Authorities**

**Cases**

*Bartenwerfer v. Buckley*, slip op., 2023 WL 2144417, 598 U.S. ___ (February 22, 2023), No. 21-908....................................................................................................................16

*Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*, 821 Fed.Appx. 701 (2020)........27

*Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989).........................27

*In re Sacramento Metro. Real Estate Investors*, 28 BR 228 .........................................22

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) .................27

*Manufacturers' Finance Co. v. McKey*, 294 U.S. 442 at 443 (1935)...................................23, 27

*Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 960 (9th Cir. 2015) .............................27

**Statutes**

11 USC 101 ......................................................................................................22

11 USC 105 ......................................................................................................23

11 USC 707(a) ..................................................................................................22

California Code of Civil Procedure 1987....................................................................7

FRCP 1 ...........................................................................................................21

**Rules**

LBR 9013 ..........................................................................................................2

LBR 9013-1 ........................................................................................................2

LBR 9014 ..........................................................................................................2

## A.  FACTUAL BACKGROUND

Separate judgments were entered in April and May 2019 against the debtor in this case, Jihad Saker ("Saker"), in the amounts of approximately $1 million each, in favor of two bereaved mothers, Cynthia Johnson and Debbie Ann Lawler, who lost their sons in a wrongful death shooting on the parking lot of the business that Saker then owned and managed, the Ahalena Hookah Lounge. Ex. 1, state court Judgments; Ex. 2, state court Complaint. After a first assignee returned the judgment to her, Ms. Lawler assigned her judgment to the Movant, Gregg Roberts ("Roberts"), which was filed on February 19, 2021. On June 30, 2022, an

assignment from Ms. Johnson to Roberts was filed. True and correct copies of both assignments are filed herewith as Ex. 3.

The only other judgment debtor in the case, Argent Retail Advisors, Inc. ("Argent"), was dismissed in exchange for just $10,000 after the judgments against it were vacated. It is too late to pursue any of the other defendants in the state court litigation, who were dismissed for lack of prosecution.

The Ahalena Hookah Lounge went out of business several years ago. The E Street Market in San Bernardino, another business operated by Mr. Saker as apparently the sole shareholder of Saker Enterprise, Inc., is in foreclosure. In San Bernardino Superior Court, Roberts obtained orders for Saker to appear for a judgment debtor examination, turn over all his shares in that corporation, and not do anything to devalue his shares in Saker Enterprise, Inc.. Saker obtained as counsel Eugene Carson ("Carson"), who negotiated with Roberts for time to get up to speed on the case in exchange for delivering the most important documents subpoenaed in connection with the examination within two weeks. Carson was unable to meet with Saker because of an injury to Carson's young child. Discussions with Saker/Carson stalled while Roberts was occupied by the postjudgment litigation with Argent.

When Roberts picked up the Saker ball, he discovered that Saker had allowed the E Street Market property to go into foreclosure by ceasing to make the mortgage payments. This clearly appeared to be a violation of the order not to devalue the shares of the corporation in

POINTS AND AUTHORITIES

which the store was held. Roberts scheduled and attended a hearing on a motion for OSC - contempt on January 6. Ex. 4, Portal Minute Order from January 6, 2023 proceeding.

Through Carson as counsel, Saker inquired of Roberts that same morning as to the possibility of a settlement. Roberts expressed interest in a settlement, but was naturally unwilling to talk numbers until he knew, through documents, what financial means Saker actually had at his disposal. Counsel Carson and a family member of Saker indicated that Saker had very little to work with. However, they also indicated that family members were interested in helping their father reach a compromise with Roberts to get their father out of trouble with the Court and to give the bereaved mothers *something* after all this time.[1]

In response to facts and argument presented at the January 6 hearing, San Bernardino Superior Court Judge Thomas Garza issued a bench warrant against Mr. Saker in the amount of $2 million, but ordered the warrant held pending Saker's newly promised cooperation in postjudgment discovery. Judge Garza also ordered Saker to produce to Roberts, outside of court, the most important records within two weeks (January 20), with the remainder to be produced at the rescheduled debtor examination on April 7. Ex. 4.

Roberts received no records within those two weeks. In response to Roberts' objections via phone and email, Carson's office finally began sending Roberts bank statements

---

[1] Throughout this paper, when Roberts refers to "Saker," Roberts is generally also referring to Saker's counsel and family members, who may be presumed to have been acting with Saker's authorization.

POINTS AND AUTHORITIES

electronically, but they arrived in haphazard order, and with several months' worth of

statements missing. Roberts provided to Carson's office a detailed list of what was received and

what was missing. Roberts also sent Carson's office a copy of the full document request

pursuant to California Code of Civil Procedure 1987, the equivalent of a subpoena, to alert

Carson's office to the need to produce even *more* records at the rescheduled April 7 debtor

examination than Saker was already failing to produce despite the order, the bench warrant, and

assistance from family and counsel.

Along with the various previously mentioned orders, on March 24, 2022 Judge Garza

had extended the lien on Saker's personal property arising from personal service of the order to

appear on Saker. The new expiration date was February 23, 2023. Ex. 5, Portal Minute Order

from March 24, 2022 proceeding. Because of the negotiation process in early 2023, which had

led to the slow but promising records production, Roberts had decided some weeks earlier not to

file yet another motion to request yet another extension on the lien. He had recorded abstracts of

judgment in San Bernardino County in hopes of securing his judgments, at least to the extent of

the value of Mr. Saker's home. Another motion would not be heard for about four months

unless Roberts could convince Judge Garza to hear the request for extension of lien on short

notice. Roberts did not see how he would be able to meet the ex parte requirements under the

circumstances. It was also unclear whether the lien would attach to nonexempt personal

property of any significant value.

On March 2, 2023, Roberts participated in a telephonic negotiation attended by, on

Saker's side, Eugene Carson, his legal assistant Chanlor Culkin, and Nakka Clark (sp?), Saker's

daughter. Even though the document production was still incomplete, Roberts was led to believe that the family members, negotiating on their father's behalf, would make an offer in compromise the following Wednesday (March 8), according to a note that Roberts made to himself immediately after the call ended. However, Roberts received no such call.

In poring over Saker's personal and corporate bank statements line by line, Roberts discovered transfers out of one of the accounts for which statements *had* been produced, *into an account at the same bank for which ZERO statements had been produced*. The day after Roberts was expecting an offer in compromise, he protested this gap in detail via email:

Mr. Carson,

Please give this message your personal attention. I cannot consider an offer in compromise until my questions are answered and the gaps in the production are remedied.

In addition, I would like to be able to give the Court ample notice if we reach a compromise and the debtor exam will be taken off-calendar. The debtor examination is just 29 days away.

I have just discovered that an additional entire category of bank records is missing from your client's production.

The Wells Fargo E Street Market checking account statements show many transfers to "Saker Enterprise, Inc", starting with the one pictured below from January 2020:

| 1/21 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx9110 Ref #Ib07J6Fys2 on 01/21/20 | 400.00 |

Some of the amounts involved are substantial. The one pictured below is also from January 2020:

| 1/30 | Online Transfer to Saker Enterprise, Inc Ref #Ib07Kfj6St Business Checking This Is The Sale Tax for E Street | 4,829.00 |

POINTS AND AUTHORITIES

Both these transfers were noted by your client or someone in your office, who circled the amounts.

Since the transfers were done online, it would seem that the Saker Enterprise business checking account was also held at Wells Fargo.

It is strange that accounts would be held both in the name of the corporation and in its fictitious business name, separately. Can you explain why two separate checking accounts were maintained for the business?

I see the note in the second line of the January 30 entry above: "This Is The Sale Tax for E Street". So I don't have any issue with that particular transaction. It's just that all these transfers clearly prove the existence of another checking account for which no statements have been provided. I need to see those statements to see if other money was coming into that business and what happened to it.

There are MANY instances of "Saker Ent" in the combined set of statements from 2020 through 2022, as shown by every blue line in this screenshot of the scrollbar in my PDF tool *[see next page]*:

I have received statements only for Mr. Saker personally and the E Street Market.

I reported gaps in the card processing statements [sent] on January 29, and then again on our conference call last week: "Only eight of the expected 36 statements were provided".

The only gap in the bank statement production that has been remedied -- the missing Arrowhead statements -- had already actually been remedied in early February but I didn't see the notification.

Please acknowledge receipt of this message and the expected timeline for remedying these gaps in the production.

Please also prepare a sworn statement for your client's family members to sign, to the effect that everything they stated on the last phone call was true and correct under penalty of perjury. If we have another phone call with any such family members, I will request another such statement.

This is not substantially different than what they would have had to swear to, had they appeared at a judgment debtor examination and been sworn in as witnesses.

POINTS AND AUTHORITIES

Please impress upon your clients all how much more convenient this online remote process is, in which I have allowed you and your clients to engage, than requiring all of them to appear repeatedly at the courthouse because documents were missing, dragging the process on for more months than it has already dragged on.

Ex. 6, Email thread between Roberts and Carson ending March 9, 2023.

*[The remainder of this page is deliberately left blank.]*

POINTS AND AUTHORITIES

*Roberts received no response to that email.* Instead, he received via first-class mail the notice of Saker's filing of a bankruptcy petition, which occurred just five days after the above email was sent.

Strangely, on March 30, Roberts received this email from the Carson law firm:



Ex. 7, March 30 email from Carson to Roberts.

That email makes it appear that Saker stopped communicating with the Carson Law Firm and went off on his own to find bankruptcy counsel. Again, not exactly a good faith move.

After sending the email above, in preparation for the first meeting of creditors, Roberts went on to identify many suspicious transactions occurring in 2020-2022 evidenced in the bank statements that were provided. Ex. 8, Saker Transactions of Interest. These transactions consisted of:

1.  Twenty-eight (28) transfers to an account for which no statements had been provided, totaling $21,703.49 (*Id.*, p. 1);

2.  Twenty-three (23) cash withdrawals from the Wells Fargo E Street Market business and
    Arrowhead personal accounts totaling $66,402.04 (with an unknown number and amount
    of cash withdrawals having been made from the undisclosed Saker Enterprise, Inc.
    account) (*Id.*, p. 2); and

3.  Twenty-one (21) direct payments from the E Street Market account to Nationstar DBA
    Mr. Cooper, the company apparently holding Saker's *personal* mortgage, totaling
    $72,144.64 (*Id.*, p. 3).

The cash withdrawals, in particular, present the strong possibility of dissipation of assets
leading up to the bankruptcy filing. No cash withdrawals are evident from the *disclosed* account
during the 365 days prepetition, but again, the court-ordered evidence concerning the other
account was never produced. At the first meeting of creditors on April 17, Roberts was unable
to question Saker about these withdrawals or any of the other suspicious transactions, because
Saker called in sick at the last minute. A second 341(a) meeting has been scheduled for May 17.
There will be little time after that meeting to conduct a Rule 2004 exam or draft and file an
adversary complaint.

On April 20, Roberts sent by email an earlier version of Exhibit 8 to Bankruptcy Trustee
Cisneros, copying Saker counsel Billyard, asking that Trustee Cisneros request the missing bank
statements from Saker. As of May 4, Cisneros had not responded. In response to substantive
follow-up emails from Roberts, further explaining the need for the bank statements, Cisneros
sent terse responses that did not address Roberts' request or concerns -- including Roberts'

earlier request for all legally disclosable documents obtained by Cisneros' office. Ex. 9, Email threads with Trustee Cisneros.

## B. Unclean Hands and Bad Faith

### 1. *Deceptive, Disorganized, and Contemptuously Dilatory Document Production*

Saker comes into this Court with unclean hands. Through promising more than once to provide documents, then taking roughly a year to provide any of them and even entirely blowing past a two-week court-ordered deadline—as documented above—Saker ran out the clock on Roberts' personal property lien. By withholding promised documents, then providing them in a haphazard fashion, and never making the promised offer in compromise, Saker needlessly increased Roberts' time and effort costs, forcing Roberts to go back to court again and again. Saker was ordered by the state court to, in essence, lay his cards on the table face-up. He promised multiple times to comply but after 15 months has still not done so.

If Saker has truly been destitute this whole time, there is nothing Roberts could have taken from him. But through Saker's behavior and the behaviors of his family and counsel (his authorized agents), Saker has been acting as though he has assets to hide. He never made any offer to even test Roberts' waters.

### 2. *Destroying the Value of Saker's Own Company in Violation of Court Order*

By the time of the January 6, 2023 hearing, Saker had already disobeyed another of Judge Garza's orders: not to do anything to devalue Saker's shares – his personal property -- in his eponymous corporation. Ceasing to make mortgage payments to the point where the property got foreclosed on, certainly devalued the shares. Transferring jurisdiction over that

property to the bankruptcy court, where Roberts cannot credit-bid on the shares and the public would certainly bid nothing for them, has devalued them to zero, if they weren't there already. This conduct by Saker has the hallmarks of the antisocial attitude "If I can't have it, *nobody can*— not even the bereaved mothers."

It would be manifestly unjust to reward Saker's trickery toward Roberts and Saker's contempt for the authority of Judge Garza, to allow Saker to coast down the road towards a discharge of his judgment debt, with no punishment whatsoever for his violations of court orders and civilized norms.

   *3.  Public Policy and Judicial Efficiency Support Granting the Motion*

It would needlessly dissipate whatever resources Saker and his family have to resolve these issues and unnecessarily take time from this Court to preside over the discovery and possible contempt process. Roberts has the right to examine Saker in this Court at one or more 341(a) meetings and under FRBP 2004. But as stated above, Saker has already frustrated Roberts' rights as to the first 341 meeting by declining to attend a five-minute telephonic meeting because of illness.

Moreover, for Roberts to keep pursuing his interests in Bankruptcy Court would require Roberts to learn and follow a whole other set of rules than in state court. It would also require Saker to pay counsel to represent him in this Court, further dissipating whatever assets Saker and his family members could otherwise devote toward a reasonable consolation payment. And it would send the message in the Central District that state court judgment debtors can disregard

court orders, and obtain protection from the bankruptcy court when they get themselves into big *legal* trouble (not just the *financial* trouble in which "honest but unfortunate debtors" find themselves).

Moreover, and very significantly, Roberts has been investigating the facts to decide whether he has a colorable claim of nondischargeability of Saker's debt to him. The shooter who admitted to having committed the shootings, Travon Stokes, testified that on the night of the shootings, the person in charge of the Ahalena Hookah Lounge let Stokes in without patting him down, allowing him to not only be on the premises but in the building with a gun. Ex. 10, 28-29. It seems likely that that same person, "Suav," either knew that Stokes was a minor, or exercised reckless disregard for whether he was a minor. Stokes had been smoking marijuana in the parking lot. Id., 29:18-25. He had a bottle of vodka with him, and the lounge employee, again, Saker's agent, "took that in". *Id.*, 28:26. Stokes was allowed to enter not only the lounge but a private room in the lounge—the kind of privilege typically offered only to favored guests of an establishment— with both hard alcohol and a firearm he was forbidden to possess. And then Stokes consumed cocaine and perhaps other drugs provided to him by Saker's agent "Suav." *Id.*, 30:17-24. Finally, Stokes consumed hard alcohol in that private room with the blessing of Saker's agent:

> Q  They serve alcohol?
> A  No.
> Q  The only way you get in alcohol was for you to sneak it
> in; right?
> A  Yes.
> Q  And you were able to do that with the -- of somebody that
> you knew that worked there?
> A  Yes.

*Id.*, 31:12-17.

---

POINTS AND AUTHORITIES

There is a substantial probability that "Suav," Saker's agent, also knew that Stokes was a felon and accordingly was not permitted to possess, much less carry, a deadly weapon, *much less carry it while intoxicated* (which even concealed handgun license holders are forbidden to do). Everyone is on constructive notice of what the law is.

Roberts has been seeking information from the Detectives Bureau of the San Bernardino Police Department, as to what Stokes or other witnesses told detectives about Saker's role in the shootings, how broad was the policy of tolerance for drugs and weapons on Saker's premises, and so forth. Roberts is considering the extraordinary step of inquiring about arrangements with the California Department of Corrections to question Mr. Stokes to see what light he is willing and able to shed on this question. Roberts does not know whether Stokes would be able to testify at a debtor examination remotely. In-person attendance would be an expensive proposition just to question Stokes for 10 or 15 minutes.

In any case, based on all the above, there is a substantial likelihood that this Court will eventually find that Saker acted with such reckless disregard for whether others would be injured as a result of his agent's actions on the night of the killings, that his debt should be deemed nondischargeable because of willful and malicious injury.[2] However, because of the

---

[2] In *Bartenwerfer v. Buckley*, slip op., 2023 WL 2144417, 598 U.S. ___ (February 22, 2023), No. 21-908, the US Supreme Court unanimously found that "the Bankruptcy Code exemption from discharge for debts involving fraud precludes the partner of the individual who committed the fraud from discharging a debt, regardless of her own culpability." Such vicarious nondischargeability might also be found to apply to debts arising from willful and malicious injury caused by an agent of a debtor. If no ruling to that effect has yet been issued, Roberts might well make a good-faith effort to make new law in this regard.

press of other business and the challenge of researching the legal issues for this Motion, time

has become very short for Roberts to conduct an examination under Rule 2004 and to draft and

file an adversary proceeding by the deadline. Moreover, if Saker is truly insolvent, even by his

own hand, little purpose would be served by the extraordinary effort that would evidently be

required to get the entire $2.8 million worth of debt declared nondischargeable. Roberts is

unlikely to obtain a compromise offer of more than a small percentage of that debt.

Accordingly, it would be in the best interests of all concerned for this Court to dismiss

the bankruptcy case, allow the parties to resume production and examination of documents

outside of court but under the purview of the state court order, and give Saker and his family

one more chance to make the offer in compromise that they repeatedly offered to make. A

negotiated settlement would be in the best interest of judicial economy, the time and effort costs

to be borne by all these witnesses, and Roberts' costs. If a compromise is reached, Saker might

not even need a bankruptcy discharge, and no one would need to expend litigation and judicial

resources on an adversary proceeding.

### 4. Several Misstatements of Fact in the Petition

Roberts drew to the attention of Amanda Billyard, Saker's counsel in this bankruptcy

case, several false statements in the petition and schedules:

> With your approval, your client checked box 16a, falsely indicating that most of
> his debts are consumer debt. That's clearly not true. Most of my debtor's debt
> consists of the two judgments that have been assigned to me with an aggregate
> value including interest of approximately $2.8 million. There's no way he has
> consumer debt anywhere near that figure.… The filing of the petition with that

box checked is a violation of several rules including the rules of professional conduct. Would you like to explain to me why that box was checked?

…

Your client also understated his assets. He has been living at the same house for many years and I believe that the deed records show no reverse mortgages. I believe he has much more equity than $50,000.

…

I am a practical and kind person. I don't know what led Mr. Saker and his family to decide to stop working towards an agreement, but I have done nothing to justify them choosing to pay you instead of paying me and, through me, the mothers who lost their sons on your client's property. If your client and his family choose to keep resisting full disclosure of the records to which I'm entitled, they will in all likelihood end up paying more than they would've had to pay if they just kept going to comply with the state court document production order and negotiate a settlement in good faith….

Ex. 11, First email thread between Roberts and Billyard, pp. 2-3.


Counsel Billyard responded to Roberts' complaint about the falsity of the "primarily consumer debts" statement by writing "[C]onsumer v/ non-consumer debts only matters when completing a means test, it has no bearing on whether or not a debt is discharged for a personal debtor." Ex. 11 p. 1. Roberts is aware of no law that allows debtors to submit false information in a bankruptcy filing because of whatever debtor counsel thinks is the purpose of the question.[3]

---

[3] The form does bear a misleading statement as to the purpose of the question: "Answer these questions for reporting purposes". That statement is so incomplete as to constitute an untruth by omission. Debtors whose debt is primarily consumer debt must pass a means test. Hence, the purpose of the question is by no means solely, or even primarily, a "reporting purpose." However, *forms are not law*, and debtor counsel had a duty to assist her client in completing the form truthfully.

POINTS AND AUTHORITIES

Official Form 101, page 6, helpfully dispels any reasonable doubt about how to *interpret*

the question: "Consumer debts are defined in 11 U.S.C. § 101(8) as "incurred by an individual

primarily for a personal, family, or household purpose":

> **16a.** **Are your debts primarily consumer debts?** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
>
> ☐ No. Go to line 16b.
>
> ■ Yes. Go to line 17.
>
> **16b.** **Are your debts primarily business debts?** *Business debts* are debts that you incurred to obtain money for a business or investment or through the operation of the business or investment.
>
> ☐ No. Go to line 16c.
>
> ☐ Yes. Go to line 17.
>
> **16c.** State the type of debts you owe that are not consumer debts or business debts

A *truthful* completion of Part 6, Section 16, would have been not to check either of the

boxes at 16a or 16b, and then to answer 16c, "State the type of debts you owe that are not

consumer debts or business debts" with something like "Premises liability and general

negligence for wrongful death." But an honest description of how most of Saker's debt arose

might have put the Trustee and this Court on alert. If they weren't on alert before, they are now.

After reviewing Saker's supplemental filing of March 28, Roberts wrote in pertinent part

the following to Billyard:

Amanda,

I have reviewed Mr. Saker's supplemental filing of March 28 (DE #11). I see
several issues that require some attention from you.

1. The false statement about most of Mr. Saker's liabilities consisting of consumer
debt has not been corrected. In fact, Mr. Saker has doubled down on that
statement in this latest filing (p. 2, Item 7). I understood your previous email

POINTS AND AUTHORITIES

response about this issue as you telling me that false statement doesn't matter, because the only purpose of the question of the nature of the liabilities is whether Mr. Saker must pass the means test. You could be right. I haven't taken the time to research the question. However, I'm not aware of false statements in a bankruptcy filing being forgiven because of the filer's understanding of the purpose of the question. I count only about $6000 in debts other than my two judgments. That is considerably less than 1% of the total amount of my two judgments.

I also don't see how you calculated the interest on the judgments. In round numbers, 10% per year since April/May 2019 is $400,000 accrued on each judgment for a total of $2.8 million.

2. One of my judgments against Mr. Saker is listed as secured while the other is listed as unsecured (p. 2, Items 2 and 3). In fact, both of my judgments are secured (though of course not by assets equal to the full amount due). The state court required me to complete two separate abstracts of judgment for each of the two judgments that were entered in the case, on different dates for different amounts. I recorded one abstract right after the other in the San Bernardino Recorder's office, as recording #'s 2022-0295901 and 2022-0295902. Why would you say that one of my judgments is secured while the other is not?

3. I would like to see a copy of the 3/16/23 appraisal of Mr. Saker's residential property. Would you be willing to provide that to me a few days before the first meeting of creditors?

4a. How was the $470,000 homestead exemption figure (Schedule C, p. 1) arrived at?

4b. How do you reconcile that figure with the answer "No" to "3. Are you claiming a homestead exemption of more than $189,050?" (Schedule C, p. 2)?

5a. On Schedule D, p. 1, my street number is given incorrectly as 247. It is given correctly elsewhere as 43430.

5b. Also on Schedule D, p. 1, "Date debt was incurred" is incorrectly given as 8/29/22. The debt underlying the two judgments was incurred in April and May 2019. I acquired the Lawler judgment in November 2020, and the Johnson judgment probably in August 2022. But the date I acquired it is not the date it was incurred.

6. (throughout) The name of Mr. Saker's corporation is Saker Enterprise, Inc., not Saker Enterprises, Inc.:

POINTS AND AUTHORITIES

…

8. The health insurance cost of $1398 a month seems excessive given that Mr. Saker is [allegedly] completely financially dependent on his family. He is eligible for free or low[er]-cost healthcare than that. Reducing or eliminating that expense would provide more money for the family to provide a decent settlement for the bereaved mothers ... and for your fees incurred dealing with my concerns.

Ex. 12, Second email thread between Roberts and Billyard.

Counsel Billyard responded to the above critique by stating on April 19, "I will file amendments for the other things. CM ECF was down a good part of last week." Roberts notes that amendments were filed April 30 (DE #14) and May 4 (DE #16). He has not taken the time to see whether all previous false statements have been corrected.

## 5. *Conclusion*

It would be more judicially efficient, be more likely to lead to a just outcome, and support the public policy of respecting state court rulings, for this Court to allow the parties to pick up where they left off in state court. The FRBP and FRCP are to be "construed, administered, and employed by the court *and the parties* to secure the just, speedy, and inexpensive determination of every action and proceeding." FRCP 1. *Saker's very filing of his bankruptcy petition obstructs the "speedy and inexpensive" part of that law* … which in this case also impairs the "just" part.

Roberts should never have had to write and file this motion, nor should he have had to spend the time to an effort identify the dozens of suspicious items in Saker's state court production and bankruptcy filings. Roberts expressed his willingness to negotiate a compromise

based on Saker's ability to pay, and was respectful throughout that process. He was not

extracting any asset from Saker other than his time. That time would have been much reduced

for all concerned, had Saker worked diligently to produce documents instead of dragging his

feet and hiding an entire account.

## C.  AUTHORITIES IN SUPPORT

*1.  Cause for dismissal under 11 USC 707(a) is not restricted to unreasonable*

*prejudicial delay occurring **postpetition***

"Debtor" is defined as in bankruptcy law (11 USC 101) as a "person or municipality

concerning which a case under this title has been commenced". However, that does not mean

that the "delay" referred to in 707(a)  must have occurred postpetition. Roberts has looked for,

but not found any, caselaw that so holds (or weighs in on the issue at all). Saker is now

obviously a debtor under that definition, even though his unreasonable and prejudicial delay

occurred prepetition. But Saker was obviously also a debtor prepetition, in the common law

sense of the term "debtor".

Moreover, even if this Court decides that 707(a)(1)  applies only to postpetition delays,

the inquiry as to whether dismissal is warranted does not end there. This is because the two

"causes" for dismissal mentioned in 707(a)(1) and (a)(2) "are merely illustrative and not

exhaustive. House Report No. 95-959, 95th Cong., 1st Sess. 380 (1977); Senate Report No. 95-

989, 95th Cong., 2nd Sess. 94 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787." *In re*

*Sacramento Metro. Real Estate Investors*, 28 BR 228 - Bankr. Court, ED California 1983.

https://scholar.google.com/scholar_case?case=2622267219033584543&q=707(a)+unreasonable

+delay+prepetition&hl=en&as_sdt=4,72,73,78,79,80,86,88,93,114,129,258,259,260,261,310,311,383.

    2.  *Equity Is in Play; That, and Several Maxims of Jurisprudence Weigh in Favor of Roberts' Motion*

    A bankruptcy court is a court of equity. "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 USC 105. "He who seeks equity, must do equity." *Manufacturers' Finance, infra.*

    It seems that a great many injustices could be prevented if more litigants and courts would keep in mind the following maxims of jurisprudence, which clearly apply here:

    a)  *CCP 3512.  One must not change his purpose to the injury of another.*

    By suddenly filing bankruptcy after having promised to make an offer in compromise without providing Roberts with a chance to accept any such offer, Saker changed his purpose, and Roberts has been injured by it. The injury consists in Roberts' having been given the Hobson's Choice of either investing considerable additional hours analyzing the bankruptcy filing, researching the law, communicating with Saker's new counsel, writing this motion, attending meetings of creditors, and doing whatever else makes sense to keep trying to get some money in satisfaction of the Lawler and Johnson judgments, or simply giving up over a year ago

and assuming that the judgments are uncollectible. Roberts went down the first road *based on Saker's assurances.*

Not only would the time and money that Roberts has invested in this case be wasted if Saker is granted discharge, but Roberts lost money that was potentially recoverable in his other cases, because of the time and money he spent on this one trying to get something for the bereaved mothers and himself. Saker should have filed bankruptcy as soon as he was served with the judgment debtor examination, or he should have followed through with the document production required of him.

CCP 3517.  *No one can take advantage of his own wrong.*

CCP 3514.  *One must so use his own rights as not to infringe upon the rights of another.*

CCP 3520.  *No one should suffer by the act of another.*

Roberts has suffered by being "Lucy'd"[4] by Saker, who strung him along for over a year promising to deliver requested documents and make a reasonable settlement offer. Far worse, the bereaved mothers Debbie Lawler and Cynthia Johnson have had their hopes raised and then repeatedly dashed by Saker's conduct.[5]

---

[4] In the *Peanuts* comic strip, Lucy repeatedly fools Charlie Brown by promising to hold a football so that Charlie can attempt a field goal, but she always pulls it away at the last minute, making Charlie fall down. Poor Charlie never learns.

[5] One of the previous times the mothers' hopes were dashed *other than* by Saker, was when the state court vacated the judgment against Argent, the other judgment debtor in the case, after

POINTS AND AUTHORITIES

Roberts estimates he has spent at least 60 hours dealing with the Saker case since Saker first promised to deliver records and make an offer in compromise 15 months ago. Aside from the Argent-related attorney fees, Roberts has incurred nearly $1000 in expenses with his off-record counsel, service of process, motion filing fees, and mileage to/from court. Roberts does not fit a "wealthy creditor" stereotype. He has qualified for free health insurance, and does not know how he will pay any of his bills in June. To meet his own needs, not to mention those of the bereaved mothers, he was counting on a reasonable offer in compromise that Saker led him to believe would be made in February last year and again by February or March of this year. Saker's delay, contempt of court, and "change of purpose" were unreasonable and have prejudiced Roberts.

Essentially, Roberts was injured because he trusted Saker. Such an outcome is at the core of much, if not most, litigation.

CCP 3527.  *The law helps the vigilant, before those who sleep on their rights.*

Clearly Saker has slept on his rights.

It would not be credible for Saker to respond to this motion by stating that he only recently realized that he could file for bankruptcy protection and pay only a few thousand dollars to an attorney for related legal services. This is common knowledge to anyone such as

Roberts levied $80,000 in Argent's bank account. The decision to vacate the judgment was based on extrinsic evidence presented more than five years after judgment was entered, in apparent violation of California law. Attorney fees and other expenses soaked up most of the $10,000 settlement that was reached to avoid the time and expense of appealing the ruling.

POINTS AND AUTHORITIES

Saker, who has lived in San Bernardino for at least two decades, founding and running several businesses. Moreover, Saker was being advised by an attorney in the state court litigation from at least February 2022. Are we to believe that that attorney did not advise Saker that bankruptcy was a viable option at that time?

It would also seem to be common knowledge, or at least something that attorney Carson would have advised Saker about, that any acceptable "consolation" compromise of more than $2 million in debt would have to be far higher than $3000. So, again, why promise to make an offer that would have to be larger than that, knowing that the "escape hatch" was right there all along? No explanation has been offered by Saker for waiting more than 15 months from when he was served with the order to appear for judgment debtor examination, and more months from when he was served with copies of the levy, turnover orders, and related orders, to the time he finally decided to seek bankruptcy protection.

Laches would be another way of putting forth the same argument from equity, although with a twist. It is not that Roberts changed his position to his detriment while Saker slept on his rights. Rather, it is that Roberts *refrained from* changing his position by taking other steps to improve his financial situation, by putting more resources into his other judgments. And he "stayed the course" in that way because of Saker's reassurances.

   *3. Unclean Hands*

   The maxim "He who comes into equity must come with clean hands" "when applicable, requires that the party affected **shall be denied relief *in toto" [emphasis added]*.

*Manufacturers' Finance Co. v. McKey*, 294 U.S. 442 at 443 (1935).[6]

https://supreme.justia.com/cases/federal/us/294/442/

> Unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). It "requires balancing the alleged wrongdoing of the plaintiff against that of the defendant." *Northbay Wellness Grp., Inc. v. Beyries*, 789 F.3d 956, 960 (9th Cir. 2015).

*Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*, 821 Fed.Appx. 701 (2020), p. 1.

In this case, the relief being sought— discharge of debt and relief from Roberts' efforts to collect —is being sought by Saker, not as a plaintiff but as a bankruptcy debtor. Saker is the one who has violated "equitable principles". There is no wrongdoing by Roberts against which to "balance" Saker's wrongdoing.

"To successfully invoke the unclean-hands defense, a defendant must demonstrate that (1) the plaintiff's conduct is inequitable, and (2) the conduct relates to the subject matter of the plaintiff's claims. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002)." *Certified Nutraceuticals, supra,* at p. 3. Both conditions are clearly met here (again with the understanding that in this case *plaintiff* means *debtor*).

---

[6] The term "party affected" in that passage is strange wording, referring to the party who is *guilty* of unclean hands, not the *injured* party. The passage makes sense only on this interpretation.

"Proper application of the unclean hands doctrine is designed to preserve public confidence in as well as the integrity of the court, by preventing it from becoming a participant in inequitable conduct." Westlaw Keynote 150, *Equity*.

### D. CONCLUSION

Not only Roberts, but much more importantly the bereaved mothers of the three young men who lost their lives on Saker's business premises, have suffered emotionally and financially by Saker's bad faith delays. It also seems clear that Saker's decision to tolerate on his premises—where alcohol consumption was permitted—a felon in possession of a gun, enabled the killings to happen. There is a substantial likelihood that the debt underlying the wrongful death judgments will be found nondischargeable if Roberts brings such an action. But the discovery and other litigation toward that end would be largely wasted if in fact Saker has dissipated all the cash withdrawals and is destitute, as his Schedules make him appear. A compromise of a significant percentage of the debt would be by far the more efficient "resolution" (if one can call it that) of the debt underlying the judgments.

Public policy favors (1) the just, speedy, and inexpensive determination of every proceeding, (2) denying relief to those who come before a court with unclean hands (in this case contempt of state court orders, hiding of assets whose location and disposition were required to be disclosed by those state court orders, and bad faith negotiation), (3) preserving the bankruptcy estate against pointless dissipation through attorney fees, and (4) allowing judges to determine guilt and appropriate punishment of litigants who commit contempt before them.

Out of an abundance of caution, in case this motion is denied, Roberts intends to apply for a Rule 2004 examination to obtain more information about the disposition of funds controlled by Saker and the circumstances surrounding the wrongful deaths in 2014. However, it would be unjust to require Roberts repeat the same procedural exercise to compel production of documents that were already ordered *and agreed by Saker* to be produced *more than 15 months ago*.

**WHEREFORE**, Assignee of Record / Judgment Creditor Gregg Roberts respectfully requests that this Court grant the Motion and dismiss Jihad Saker's bankruptcy petition.

POINTS AND AUTHORITIES

# Exhibit 1

**JUD-100**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|

Robert B. Gibson, Esq.    SBN: 162347
GIBSON & HUGHES
1851 E. First Street, Suite 650, SANTA ANA, CA 92705
TELEPHONE NO.:714-547-8377    FAX NO. *(Optional):*714-547-8378
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* Debbie Lawler

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

APR 1 9 2019

BY _____
BRENDA MATSUMURA, DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
STREET ADDRESS:247 West Third Street
MAILING ADDRESS:247 West Third Street
CITY AND ZIP CODE:San Bernardino, 92415-0210
BRANCH NAME:San Bernardino District - Civil Division

PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson

DEFENDANT: Ahalena Hookah Lounge, et al.

| JUDGMENT | | | CASE NUMBER: |
|---|---|---|---|
| ☐ By Clerk    ☒ By Default    ☐ After Court Trial | | | CIVDS1607235 |
| ☒ By Court    ☐ On Stipulation    ☐ Defendant Did Not Appear at Trial | | | |

### JUDGMENT

1. ☒  **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐  **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒  **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐  plaintiff's testimony and other evidence.
      (2) ☒  plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐  **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐  the signed written stipulation was filed in the case.
   c. ☐  the stipulation was stated in open court    ☐  the stipulation was stated on the record.

3. ☐  **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*
      before *(name of judicial officer):*
   b. Appearances by:
      ☐  Plaintiff *(name each):*          ☐  Plaintiff's attorney *(name each):*
         (1)                                  (1)
         (2)                                  (2)
      ☐  Continued on Attachment 3b.
      
      ☐  Defendant *(name each):*          ☐  Defendant 's attorney *(name each):*
         (1)                                  (1)
         (2)                                  (2)
      ☐  Continued on Attachment 3b.
   c. ☐  Defendant did not appear at trial. Defendant was properly served with notice of trial.
   d. ☐  A statement of decision (Code Civ. Proc., § 632)  ☐  was not  ☐  was    requested.

Page 1 of 2

**JUDGMENT**
Code of Civil Procedure, §§ 585, 664.6
Westlaw Doc & Form Builder™

**Mot Ex. 1, p. 1 of 4**

| PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson | CASE NUMBER: |
|---|---|
| DEFENDANT: Ahalena Hookah Lounge, et al. | CIVDS1607235 |

**JUDGMENT IS ENTERED AS FOLLOWS BY:**    [X] THE COURT    [ ] THE CLERK

4. [ ]   **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. [X] for plaintiff (name each): Cynthia K. Johnson

and against defendant (names): Jihad Saker dba Ahalena Hookah Lounge and Argent Retail Advisors,

[ ] Continued on Attachment 5a.

b. [ ] for defendant (name each):

c. [ ] for cross-complainant (name each):

and against cross-defendant (name each):

[ ] Continued on Attachment 5c.

d. [ ] for cross-defendant (name each):

6. **Amount.**

a. [X] Defendant named in item 5a above must pay plaintiff on the complaint:

c. [ ] Cross-defendant named in item 5c above must pay cross-complainant on the cross-complaint:

| | | | |
|---|---|---|---|
| (1) [X] | Damages | $ | ~~1,500,000.00~~ 1,000,000.00 |
| (2) [ ] | Prejudgment interest at the annual rate of      % | $ | |
| (3) [ ] | Attorney fees | $ | |
| (4) [X] | Costs | $ | 5,251.25 |
| (5) [ ] | Other (specify): | $ | |
| (6) | **TOTAL** | $ | ~~1,505,251.25~~ 1,005,251.25 |

| | | | |
|---|---|---|---|
| (1) [ ] | Damages | $ | |
| (2) [ ] | Prejudgment interest at the annual rate of      % | $ | |
| (3) [ ] | Attorney fees | $ | |
| (4) [ ] | Costs | $ | |
| (5) [ ] | Other (specify): | $ | |
| (6) | **TOTAL** | $ | |

b. [ ] Plaintiff to receive nothing from defendant named in item 5b.
[ ] Defendant named in item 5b to recover costs $ _____
[ ] and attorney fees $ _____

d. [ ] Cross-complainant to receive nothing from cross-defendant named in item 5d.
[ ] Cross-defendant named in item 5d to recover costs $ _____
[ ] and attorney fees $ _____

7. [ ] Other (specify):

Date:  **APR 1 9 2019**

[✓] _____
**MICHAEL A. SACHS** JUDICIAL OFFICER

Date:    [ ] Clerk, by _____, Deputy

| (SEAL) | **CLERK'S CERTIFICATE** (Optional) |
|---|---|
| | I certify that this is a true copy of the original judgment on file in the court. |
| | Date: |
| | Clerk, by _____, Deputy |

Page 2 of 2

**Mot Ex. 1, p. 2 of 4**

**JUD-100**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Robert B. Gibson, Esq.  SBN: 162347 <br> GIBSON & HUGHES <br> 1851 E. First Street, Suite 650, SANTA ANA, CA 92705 <br> TELEPHONE NO.:714-547-8377  FAX NO. *(Optional):*714-547-8378 <br> E-MAIL ADDRESS *(Optional):* <br> ATTORNEY FOR *(Name):* Debbie Lawler | *F I L E D* <br> SUPERIOR COURT OF CALIFORNIA <br> COUNTY OF SAN BERNARDINO <br> SAN BERNARDINO CIVIL DIVISION <br> MAY 1 3 2019 <br> BY <br> VERONICA GONZALEZ, DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
STREET ADDRESS: 247 West Third Street
MAILING ADDRESS: 247 West Third Street
CITY AND ZIP CODE: San Bernardino, 92415-0210
BRANCH NAME: San Bernardino District - Civil Division

PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson

DEFENDANT: Ahalena Hookah Lounge, et al.

| JUDGMENT | | CASE NUMBER: |
|---|---|---|
| ☐ By Clerk  ☒ By Default  ☐ After Court Trial <br> ☒ By Court  ☐ On Stipulation  ☐ Defendant Did Not Appear at Trial | | CIVDS1607235 |

**JUDGMENT**

1. ☒ **BY DEFAULT**
   a. Defendant was properly served with a copy of the summons and complaint.
   b. Defendant failed to answer the complaint or appear and defend the action within the time allowed by law.
   c. Defendant's default was entered by the clerk upon plaintiff's application.
   d. ☐ **Clerk's Judgment** (Code Civ. Proc., § 585(a)). Defendant was sued only on a contract or judgment of a court of this state for the recovery of money.
   e. ☒ **Court Judgment** (Code Civ. Proc., § 585(b)). The court considered
      (1) ☐ plaintiff's testimony and other evidence.
      (2) ☒ plaintiff's written declaration (Code Civ. Proc., § 585(d)).

2. ☐ **ON STIPULATION**
   a. Plaintiff and defendant agreed (stipulated) that a judgment be entered in this case. The court approved the stipulated judgment and
   b. ☐ the signed written stipulation was filed in the case.
   c. ☐ the stipulation was stated in open court  ☐ the stipulation was stated on the record.

3. ☐ **AFTER COURT TRIAL.** The jury was waived. The court considered the evidence.
   a. The case was tried on *(date and time):*
      before *(name of judicial officer):*
   b. Appearances by:
      ☐ Plaintiff *(name each):*
         (1)
         (2)
      ☐ Continued on Attachment 3b.

      ☐ Defendant *(name each):*
         (1)
         (2)
      ☐ Continued on Attachment 3b.

      ☐ Plaintiff's attorney *(name each):*
         (1)
         (2)

      ☐ Defendant's attorney *(name each):*
         (1)
         (2)

   c. ☐ Defendant did not appear at trial. Defendant was properly served with notice of trial.

   d. ☐ A statement of decision (Code Civ. Proc., § 632) ☐ was not ☐ was  requested.

Page 1 of 2

**Mot Ex. 1, p. 3 of 4**

| PLAINTIFF: Debbie Ann Lawler, Cynthia K. Johnson | CASE NUMBER: |
|---|---|
| DEFENDANT: Ahalena Hookah Lounge, et al. | CIVDS1607235 |

JUDGMENT IS ENTERED AS FOLLOWS BY:    [X] THE COURT    [ ] THE CLERK

4. [ ]    **Stipulated Judgment.** Judgment is entered according to the stipulation of the parties.

5. **Parties.** Judgment is

a. [X] for plaintiff (name each): Debbie Ann Lawler

   and against defendant (names): Jihad Saker dba Ahalena
   Hookah Lounge and Argent Retail Advisors

   [ ] Continued on Attachment 5a.

b. [ ] for defendant (name each):

c. [ ] for cross-complainant (name each):

   and against cross-defendant (name each):

   [ ] Continued on Attachment 5c.

d. [ ] for cross-defendant (name each):

6. **Amount.**

a. [X] Defendant named in item 5a above must
   pay plaintiff on the complaint:

| | | | | |
|---|---|---|---|---|
| (1) | [X] | Damages | $ | 1,000,000.00 |
| (2) | [ ] | Prejudgment interest at the annual rate of    % | $ | |
| (3) | [ ] | Attorney fees | $ | |
| (4) | [ ] | Costs | $ | |
| (5) | [ ] | Other (specify): | $ | |
| (6) | | **TOTAL** | $ | 1,000,000.00 |

c. [ ] Cross-defendant named in item 5c above must pay
   cross-complainant on the cross-complaint:

| | | | | |
|---|---|---|---|---|
| (1) | [ ] | Damages | $ | |
| (2) | [ ] | Prejudgment interest at the annual rate of    % | $ | |
| (3) | [ ] | Attorney fees | $ | |
| (4) | [ ] | Costs | $ | |
| (5) | [ ] | Other (specify): | $ | |
| (6) | | **TOTAL** | $ | |

b. [ ] Plaintiff to receive nothing from defendant
   named in item 5b.
   [ ] Defendant named in item 5b to recover
   costs  $
     [ ] and attorney fees  $

d. [ ] Cross-complainant to receive nothing from
   cross-defendant named in item 5d.
   [ ] Cross-defendant named in item 5d to recover
   costs  $
     [ ] and attorney fees  $

7. [ ] Other (specify):

Date:    **MAY 1 3 2019**

_____
JUDICIAL OFFICER

**MICHAEL A. SACHS**

Date:    [ ] Clerk, by _____ , Deputy

| (SEAL) | **CLERK'S CERTIFICATE** (Optional) |
|---|---|
| | I certify that this is a true copy of the original judgment on file in the court. |
| | Date: |
| | Clerk, by _____ , Deputy |

Page 2 of 2

JUD-100 [New January 1, 2002]    **JUDGMENT**

**Mot Ex. 1, p. 4 of 4**

# Exhibit 2

PLD-PI-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Robert B. Gibson, Esq. (SBN: 162347)
GIBSON & HUGHES
1551 N. Tustin Avenue
Suite 530
Santa Ana, CA 92705

TELEPHONE NO: (714) 547-8377   FAX NO. (Optional): (714) 547-8378
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
STREET ADDRESS: 247 W. Third Street
MAILING ADDRESS: 247 W. Third Street
CITY AND ZIP CODE: San Bernardino, CA 92415-0240
BRANCH NAME: CENTRAL COURT

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

MAY 1 0 2016

BY _Victoria Sanchez_
VICTORIA SANCHEZ, DEPUTY

PLAINTIFF: DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON

~JIHAD SAKER

DEFENDANT: AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, VALMOR
LIMITED, L.P., AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI
CAPITAL MANAGEMENT SERVICES, INC., ARGENT RETAIL ADVISORS,

[x] DOES 1 TO _100 inclusive_

COMPLAINT—Personal Injury, Property Damage, Wrongful Death
[ ] AMENDED (Number):
Type (check all that apply):
[ ] MOTOR VEHICLE    [x] OTHER (specify): General Negligence
[ ] Property Damage    [ ] Wrongful Death   Premises Liability
[ ] Personal Injury    [ ] Other Damages (specify):

$435 —
160570-0877

Jurisdiction (check all that apply):
[ ] ACTION IS A LIMITED CIVIL CASE
Amount demanded  [ ] does not exceed $10,000
                 [ ] exceeds $10,000, but does not exceed $25,000
[x] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint
   [ ] from limited to unlimited
   [ ] from unlimited to limited

CASE NUMBER:

CIVDS1607235

1. **Plaintiff** (name or names): DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON

   alleges causes of action against **defendant** (name or names): AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, VALMOR
   LIMITED, L.P., AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT SERVICES, INC., ET AL

2. This pleading, including attachments and exhibits, consists of the following number of pages:

3. Each plaintiff named above is a competent adult
   a. [ ] **except** plaintiff (name):
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity (describe):
      (3) [ ] a public entity (describe):
      (4) [ ] a minor  [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other (specify):
      (5) [ ] other (specify):

   b. [ ] **except** plaintiff (name):
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity (describe):
      (3) [ ] a public entity (describe):
      (4) [ ] a minor  [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other (specify):
      (5) [ ] other (specify):

**Mot Ex. 2, p. 1 of 6**

[ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property
Damage, Wrongful Death**

Legal
Solutions
Plus

Code of Civil Procedure, § 425.12

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: |
|---|---|

4. ☐ **Plaintiff** *(name):*

    is doing business under the fictitious name *(specify):*

    and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

a. ☒ **except** defendant *(name):* AHALENA HOOKAH LOUNGE

  (1) ☒ a business organization, form unknown
  (2) ☐ a corporation
  (3) ☐ an unincorporated entity *(describe):*

  (4) ☐ a public entity *(describe):*

  (5) ☐ other *(specify):*

c. ☒ **except** defendant *(name):* AUGUSTA DEVELOPMENT CORPORATION

  (1) ☐ a business organization, form unknown
  (2) ☒ a corporation
  (3) ☐ an unincorporated entity *(describe):*

  (4) ☐ a public entity *(describe):*

  (5) ☐ other *(specify):*

b. ☒ **except** defendant *(name):* VALMOR LIMITED, L.P.

  (1) ☒ a business organization, form unknown
  (2) ☐ a corporation
  (3) ☐ an unincorporated entity *(describe):*

  (4) ☐ a public entity *(describe):*

  (5) ☐ other *(specify):*

d. ☒ **except** defendant *(name):* NAI CAPITAL, INC.

  (1) ☒ a business organization, form unknown
  (2) ☐ a corporation
  (3) ☐ an unincorporated entity *(describe):*

  (4) ☐ a public entity *(describe):*

  (5) ☐ other *(specify):*

☒ Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.

a. ☒ Doe defendants *(specify Doe numbers):* 1 TO 100 were the agents or employees of other named defendants and acted within the scope of that agency or employment.

b. ☒ Doe defendants *(specify Doe numbers):* 1 TO 100 are persons whose capacities are unknown to plaintiff.

7. ☐ Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because

a. ☐ at least one defendant now resides in its jurisdictional area.
b. ☐ the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
c. ☒ injury to person or damage to personal property occurred in its jurisdictional area.
d. ☐ other *(specify):*

9. ☐ Plaintiff is required to comply with a claims statute, **and**

a. ☐ has complied with applicable claims statutes, **or**
b. ☐ is excused from complying because *(specify):*

**Mot Ex. 2, p. 2 of 6**

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

PLD-PI-001

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached):*
   a. [ ] Motor Vehicle
   b. [X] General Negligence
   c. [X] Intentional Tort
   d. [ ] Products Liability
   e. [X] Premises Liability
   f. [X] Other *(specify):* Wrongful Death

11. Plaintiff has suffered
   a. [X] wage loss
   b. [ ] loss of use of property
   c. [X] hospital and medical expenses
   d. [X] general damage
   e. [ ] property damage
   f. [X] loss of earning capacity
   g. [X] other damage *(specify):* non-economic damages.

12. [x] The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. [ ] listed in Attachment 12.
   b. [x] as follows:
   Debbie Ann Lawler -- Surviving mother of decedents, David Dywane Lawler and Terry Lyn Freeman, Jr.
   Cynthia K. Johnson -- surviving mother of decedent, Kavin Lamont Johnson
   Plaintiffs also lost love, comfort, care, assistance, protection, affection and moral support

13. The relief sought in this complaint is within the jurisdiction of this court.

14. **Plaintiff prays** for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) [x] compensatory damages
      (2) [ ] punitive damages
   The amount of damages is *(in cases for personal injury or wrongful death, you must check (1)):*
   (1) [x] according to proof
   (2) [ ] in the amount of: $ 0.00

15. [x] The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers):*
   All paragraphs of this complaint.

Date: May 9, 2016

Robert B. Gibson
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

**Mot Ex. 2, p. 3 of 6**

MC-025

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |
| --- | --- |

**ATTACHMENT** *(Number):* 5 _____
*(This Attachment may be used with any Judicial Council form.)*

5.

NAI CAPITAL MANAGEMENT SERVICES, INC., a business organization, form unknown.

ARGENT RETAIL ADVISORS, a business organization, form unknown.

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Mot Ex. 2, p. 4 of 6

*(Add pages as required)*

Form Approved for Optional Use
Judicial Council of California
MC-025 [Rev. July 1, 2009]

**ATTACHMENT**
**to Judicial Council Form**

Legal
Solutions
& Plus

PLD-PI-001(2)

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |
|---|---|

FIRST _____   **CAUSE OF ACTION—General Negligence**   Page 4 ____
(number)

ATTACHMENT TO ☐ Complaint   ☐ Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name)*: DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON

alleges that defendant *(name)*: AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, VALMOR LIMITED, L.P.,AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT SERVICES, INC., ARGENT RETAIL ADVISORS, et al.

☒ Does 1 ____ to 100 inclusive

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff
on *(date)*: or about May 16, 2014
at *(place)*: or near Ahalena Hookah Lounge located at 1983 Diners Ct in the City of San Bernardino, County of San Bernardino
*(description of reasons for liability)*:

Decedents', David Dywane Lawler, Terry Lyn Freeman, Jr. and Kavin Lamont Johnson, were patrons at Ahalena Hookah Lounge on May 16, 2014. Decedents were among 60 to 100 people hanging out in front of Ahalena Hookah Lounge after 4:00 a.m., in the parking lot.

Defendant, Travon Lewis Stokes, approached the decedents and fataly shot them. The negligence of security measures allowed the crowd to stay in the parking lot instead of dispersing the crowd.

As the proximate result of the negligence of defendants, decedents were shot and killed. The defendants failed to maintain, secure and staff the property, and failed to adequately protect its patrons.

The negligence of these defendants was a substantial factor in the death of David Dywane Lawler, Terry Lyn Freeman, Jr., and Kavin Lamont Johnson.

**Mot Ex. 2, p. 5 of 6**
Page 1 of 1

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

**CAUSE OF ACTION—General Negligence**

Legal Solutions Plus

Code of Civil Procedure 425.12

PLD-PI-001(4)

| SHORT TITLE: LAWLER, et al. v., AHALENA HOOKAH LOUNGE, et al. | CASE NUMBER: CIVDS1607235 |

SECOND _____   **CAUSE OF ACTION—Premises Liability**   Page 5 _____
       (number)

ATTACHMENT TO [X] Complaint   [ ] Cross-Complaint

*(Use a separate cause of action form for each cause of action.)*

Prem.L-1. Plaintiff *(name):* DEBBIE ANN LAWLER, CYNTHIA K. JOHNSON
alleges the acts of defendants were the legal (proximate) cause of damages to plaintiff.
On *(date):* May 16, 2016          plaintiff was injured on the following premises in the following

fashion *(description of premises and circumstances of injury):*
at or near Ahalena Hookah Lounge located at 1983 Diner Court in the
City of San Bernardino, County of San Bernardino, decedents, David
Dywane Lawler, Terry Lyn Freeman, Jr., and Kavin Lamont Johnson were
shot and killed.

Prem.L-2.   [X] **Count One--Negligence** The defendants who negligently owned, maintained, managed and operated
the described premises were *(names):*  AHALENA HOOKAH LOUNGE, TRAVON LEWIS STOKES, JIHAD SAKER,
VALMOR LIMITED, L.P.,AUGUSTA DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT
SERVICES, INC., ARGENT RETAIL ADVISORS
[X] Does _____ to _____

Prem.L-3.   [ ] **Count Two--Willful Failure to Warn**   [Civil Code section 846] The defendant owners who willfully
or maliciously failed to guard or warn against a dangerous condition, use, structure, or activity were
*(names):*

[ ] Does _____ to _____
Plaintiff, a recreational user, was   [ ] an invited guest   [ ] a paying guest.

Prem.L-4.   [ ] **Count Three--Dangerous Condition of Public Property**   The defendants who owned public property
on which a dangerous condition existed were *(names):*

[ ] Does _____ to _____
a. [ ]   The defendant public entity had   [ ] actual   [ ] constructive notice of the existence of the
dangerous condition in sufficient time prior to the injury to have corrected it.
b. [ ]   The condition was created by employees of the defendant public entity.

Prem.L-5. a. [X] **Allegations about Other Defendants**   The defendants who were the agents and employees of the
other defendants and acted within the scope of the agency were *(names):* EACH DEFENDANT AS TO
THE OTHER.

[X] Does _____ to _____
b. [X] The defendants who are liable to plaintiffs for other reasons and the reasons for their liability are
[ ] described in attachment Prem.L-5.b [X] as follows *(names):* AHALENA HOOKAH LOUNGE,
TRAVON LEWIS STOKES, JIHAD SAKER, VALMOR LIMITED, L.P.,AUGUSTA
DEVELOPMENT CORPORATION, NAI CAPITAL, INC., NAI CAPITAL MANAGEMENT
SERVICES, INC., ARGENT RETAIL ADVISORS

Mot Ex 2 p 6 of 6

Page 1 of 1

# Exhibit 3

1   Gregg Roberts
     43430 E Florida Ave #F-293
2   Hemet CA 92544
3   951-330-4450

4   Assignee *In Pro Per*

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

NOV 1 3 2020

BY _____
DEBRA PEDROSA, DEPUTY

IN THE SUPERIOR COURT OF CALIFORNIA,

COUNTY OF SAN BERNARDINO

| | | |
|---|---|---|
| Debbie Ann Lawler and Cynthia K. Johnson | ) | Case No. CIV DS1607235 |
| Plaintiffs, | ) ) | ACKNOWLEDGMENT OF |
| v. | ) ) | ASSIGNMENT OF JUDGMENT |
| Ahalena Hookah Lounge, et al., | ) ) | CA CCP §673 |
| Defendants | ) ) ) | |

Debbie Ann Lawler, Plaintiff and Judgment Creditor in the within matter, hereby provides the following in support of an ASSIGNMENT OF JUDGMENT:

1.  THAT final judgment was entered by this Court against Defendants Jihad Saker dba Ahalena Hookah Lounge and Argent Retail Advisors on 5/13/2019.

2.  THAT Plaintiff was awarded the total amount of $1,000,000 against Defendants Jihad Saker dba Ahalena Hookah Lounge, and Argent Retail Advisors, plus post-judgment interest on that amount at the statutory rate.

3.  THAT the judgment has not been renewed.

4.  THAT Debbie Ann Lawler, whose address is 807 Master Way, Beaumont CA 92223, is the Judgment Creditor of Record.

5.  THAT the Judgment Debtors of Record are Jihad Saker dba Ahalena Hookah Lounge (last known address 1983 Diners Court, San Bernardino CA 92415) and Argent Retail Advisors (last known address 27285 Las Ramblas Ste 147, Mission Viejo CA 92691).

ACKNOWLEDGMENT OF ASSIGNMENT OF JUDGMENT

**Mot Ex. 3, p. 1 of 7**



1  6. THAT the Judgment Creditor Debbie Ann Lawler has been paid a total of $ _0.00_ toward the

2  satisfaction of said judgment.

3  7. THAT Debbie Ann Lawler, Judgment Creditor in the above action, does hereby assign all rights,

4  title, interest and ownership of said judgment to:

5

6                  Gregg Roberts

                43430 E Florida Ave #F-293

7                  Hemet CA 92544

                951-330-4450

8

9  Signed this _3rd_ day of _November_, 2020 at

10  _Beaumont, California_

11  (City / State)

12                Signed: _Debbie Lawler_

13                Debbie Ann Lawler

14                Plaintiff / Original Judgment Creditor

15

16  A notary public or other officer completing this certificate verifies only the identity
of the individual who signed the document to which this certificate is attached, and

17  not the truthfulness, accuracy, or validity of that document.

18  **ACKNOWLEDGMENT**

19

20  State of _California_

21  County of _Riverside_ } ss.

22

23  On _November 3, 2020_ (date) before me, _Krista Lindberg Notary Public_,

24  _____ (title), personally appeared

25  _Debbie Ann Lawler_ _____

26

27  who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to

28  the within instrument and acknowledged to me that she executed the same in her authorized capacity,

ACKNOWLEDGMENT OF ASSIGNMENT OF JUDGMENT

*Page 2 of 3*

**Mot Ex. 3, p. 3 of 7**

and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

KRISTA LINDBERG
Notary Public – California
Riverside County
Commission # 2208012
My Comm. Expires Jul 30, 2021

Signature

(seal)

ACKNOWLEDGMENT OF ASSIGNMENT OF JUDGMENT

*Page 3 of 3*

**Mot Ex. 3, p. 4 of 7**

1  Gregg Roberts
   43430 E Florida Ave #F-293
2  Hemet CA 92544
   951-330-4450
3

4  Assignee *In Pro Per*

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

JUN 30 2022

BY _____
GLORIA MARIN, DEPUTY

5

6

IN THE SUPERIOR COURT OF CALIFORNIA,

COUNTY OF SAN BERNARDINO

7

8  Debbie Ann Lawler and Cynthia K. Johnson      )      Case #CIVDS1607235
                                                  )
9  Plaintiffs,                                    )      ACKNOWLEDGMENT OF
                                                  )
              v.                                  )      ASSIGNMENT OF JUDGMENT
10                                                )
11 Ahalena Hookah Lounge, et al.,                 )      CA CCP §673
                                                  )
12 Defendants                                     )
                                                  )
13

14 Cynthia K. Johnson, Plaintiff and Judgment Creditor in the within matter, hereby provides the

15 following in support of an ASSIGNMENT OF JUDGMENT:

16
17 1.  THAT final judgment was entered by this Court in favor of Cynthia K. Johnson against

18     Defendants Jihad Saker dba Ahalena Hookah Lounge and Argent Retail Advisors on 4/19/2019.

19 2.  THAT Plaintiff was awarded the total amount of $1,005,251.25 against Defendants Jihad Saker

20     dba Ahalena Hookah Lounge and Argent Retail Advisors, plus post-judgment interest on that

21     amount at the statutory rate.

22 3.  THAT the judgment has not been renewed.

23
24 4.  THAT Cynthia K. Johnson, whose address is 2260 Valencia ave, San Bernardino CA 92404, is

25     the Judgment Creditor of Record.

26 5.  THAT the Judgment Debtors of Record are Jihad Saker DBA Ahalena Hookah Lounge (last

27     known address 1137 W 17th St, San Bernardino CA 92411) and Argent Retail Advisors (last

28     known address 9870 Research Drive, Irvine CA 92618).

---

ACKNOWLEDGMENT OF ASSIGNMENT OF JUDGMENT

*Page 1 of 3*                          **Mot Ex. 3, p. 5 of 7**

6.  THAT the Judgment Creditor Cynthia K. Johnson has been paid a total of $ __0.00__ toward the satisfaction of said judgment.

7.  THAT Cynthia K. Johnson, Judgment Creditor in the above action, does hereby assign all rights, title, interest and ownership of said judgment to:

> Gregg Roberts
> 43430 E Florida Ave #F-293
> Hemet CA 92544
> 951-330-4450

Signed this __30th__ day of __June__, 2022 at
__San Bernardino, California__
(City / State)

Signed: _Cynthia_

Cynthia K. Johnson

Plaintiff / Original Judgment Creditor

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

### ACKNOWLEDGMENT

State of __California__

County of __San Bernardino__  } ss.

On __June 30 2022__ (date) before me, __J. Cerda Madrigal, notary public__,

__Notary Public__ (title), personally appeared

__Cynthia K. Johnson__

who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity,

---

ACKNOWLEDGMENT OF ASSIGNMENT OF JUDGMENT

*Page 2 of 3*

**Mot Ex. 3, p. 6 of 7**

and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

J. CERDA MADRIGAL
Notary Public - California
San Bernardino County
Commission # 2337741
My Comm. Expires Nov 19, 2024

_____
Signature

(seal)

ACKNOWLEDGMENT OF ASSIGNMENT OF JUDGMENT

*Page 3 of 3*

**Mot Ex. 3, p. 7 of 7**

# Exhibit 4



**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN BERNARDINO**
**San Bernardino District**
**247 West 3rd St**
**San Bernardino, CA 92415**
**www.sb-court.org**

# PORTAL MINUTE ORDER

**Case Number: CIVDS1607235**                                    **Date: 1/6/2023**

**Case Title:  LAWLER-V-AHALENA HOOKA LOUNGE**

---

| **Department S27 - SBJC** | **Date: 1/6/2023** | **Time: 8:30 AM** | **Ex Parte Hearing - Predisposition** |

---

Judicial Officer: Thomas S Garza
Judicial Assistant: Debra Pedrosa
Court Reporter: Traci Troli
Court Attendant: Cesar Lepe

**Appearances**
Attorney Gregg Roberts present for Assignee Gregg Roberts
Plaintiff DEBBIE ANN LAWLER present
Attorney Eugene Carson present for Defendant JIHAD SAKER
Defendant JIHAD SAKER present

**Proceedings**
Gregg Roberts's Ex parte Application for an OSC why the judgment debtor should not be held in contempt is heard.

Court finds notice of the hearing on ex parte application was given to the opposing party.
Ex parte application argued.

**Court Finds:**
Gregg Roberts's Ex parte Application for an OSC why the judgment debtor should not be held in contempt is denied.
Defendant Jihad Saker is ordered to provide Plaintiff the requested accounting information including:

One year of bank statements from the Wells Fargo and Arrowhead Credit Union accounts,
Last three years of defendants State and Federal tax returns.

Bench Warrant issued and held for Defendant Jihad Saker in the amount of $2,000,000.00.

**Hearings**
Court orders 03/08/2023 Non-Appearance Status Reviewing Hearing hearing Vacated.

Court orders 03/08/2023 Status Conference hearing Vacated.

Further Status (Predisposition): set for 4/7/2023 at 8:30 AM in Department S27 - SBJC
Examination of Judgment Debtor

Interpreter required at next hearing. Language: Arabic

**== Minute Order Complete ==**

**Mot Ex. 4, p. 1 of 1**

**Exhibit 5**



**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN BERNARDINO**
San Bernardino District
247 West 3rd St
San Bernardino, CA 92415
www.sb-court.org

# PORTAL MINUTE ORDER

**Case Number: CIVDS1607235**                                    **Date: 3/24/2022**

**Case Title:   LAWLER-V-AHALENA HOOKA LOUNGE**

| Department S27 - SBJC | Date: 3/24/2022 | Time: 9:00 AM | Ex Parte Hearing - Predisposition |
|---|---|---|---|

Judicial Officer: Thomas S Garza
Judicial Assistant: Sulma Torres
Court Reporter: Traci Troli
Court Attendant: Cesar Lepe

**Appearances**
Assignee Gregg Roberts present

**Proceedings**
Gregg Roberts's Ex parte Application for Turnover Delivery of Property, Protective Order, Order to Compel
Production of Documents, and Extension of Lien is heard.

No opposition presented.

**Court Finds:**
Gregg Roberts's Ex parte Application for Turnover Delivery of Property, Protective Order, Order to Compel
Production of Documents, and Extension of Lien is granted.
Order Filed Re: Ex Parte Application for Turnover Delivery of Property, Protective Order, Order to Compel Production of
Documents, and Extension of Lien

**== Minute Order Complete ==**

**Mot Ex. 5, p. 1 of 1**

# Exhibit 6

Re: SAKER         mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document     Page 55 of 101

Subject: Re: SAKER
From: Gregg Roberts <gregg@legalsupport-sc.com>
Date: 3/9/2023, 10:20 AM
To: Carson Firm <thecarsonlaw@gmail.com>

Mr. Carson,

Here are a few more questions and gaps.

1. Please ask your clients to explain why $20,000 was withdrawn in March 2021 from the Arrowhead account, and where that money went:

| | | | |
|---|---|---|---|
| 03/03 | -10,004.99 | 12,276.70 | Withdrawal |
| 03/03 | -10,004.99 | 2,271.71 | Withdrawal |

That money appears to have been withdrawn in two CASH withdrawals, since there's no information as to where it went. Transfers always state some destination account, issuance of a cashier's check, etc.

2. What was the source of the funds in these cash deposits into the Arrowhead personal account, why were they made into that account, and why were they made in cash?

| | | | |
|---|---|---|---|
| 08/12 | 2,020.00 | 5,656.44 | Deposit |
| 08/23 | -128.66 | 5,527.78 | Withdrawal Bill Payment #123! |
| 08/25 | 49.40 | 5,577.18 | Deposit Kiosk CoinDeposit |
| 08/25 | 3,650.00 | 9,227.18 | Deposit |
| 11/15 | -6.94 | 8,263.45 | Withdrawal Debit Card VISA Merch.Post:11/15 UBER *EATS HELP.UBER.CO 800-5928996 CA |
| 11/15 | -48.33 | 8,215.12 | Withdrawal Debit Card VISA Merch.Post:11/15 UBER EATS HELP.UBER.COM CA |
| 11/18 | 4,300.00 | 12,515.12 | Deposit |
| 11/19 | -5.86 | 12,509.26 | Withdrawal Debit Card VISA Merch.Post:11/19 UBER EATS HELP.UBER.COM CA |
| 12/28 | 7,274.00 | 17,747.35 | Deposit |
| 12/28 | 1.00 | 17,748.35 | Deposit DEPOSIT CORRECTION 12/28/21 |
| 12/30 | -4.78 | 17,743.57 | Withdrawal Debit Card VISA Merch.Post:12/30 UBER EATS HELP.UBER.COM CA |
| 12/30 | -32.42 | 17,711.15 | Withdrawal Debit Card VISA Merch.Post:12/30 UBER EATS HELP.UBER.COM CA |
| 01/18 | 2,270.00 | 19,294.84 | Deposit |
| 01/18 | 825.00 | 20,119.84 | Deposit |

Those payments do not appear to be consistent with the purpose of keeping Mr. Saker financially afloat. As you can see, there were already substantial funds in his personal account (third column) when these deposits were made. And, these deposits were made into his personal account, not his

**Mot Ex. 6, p. 1 of 10**

business account.

(In case it becomes relevant later, I note that all the casual movements of money shown in the document productions between Mr. Saker's personal and business accounts -- combined with what I'm guessing is the nonexistence of any corporate agendas, meeting minutes, or shareholders other than Mr. Saker -- would make it fairly easy for me to get a ruling of alter ego (do a reverse veil-piercing). That, in turn, would allow me to directly levy business assets. I'm refraining from going down that road at this point because of your client/family's cooperation (incomplete and delayed though it has been) with regard to documents pertaining to the business, to avoid any need for the family to pay you even more to defend against an alter ego motion, and because the business appears to have no significant assets at this point.)

3. I don't see any statements from 2023. Can you please add January, February, and March 2023 to the list of statements that need to be provided for ALL ACCOUNTS?

Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution of copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

On 3/9/2023 9:39 AM, Gregg Roberts wrote:

> Mr. Carson,
>
> Please give this message your personal attention. I cannot consider an offer in compromise until my questions are answered and the gaps in the production are remedied.
>
> In addition, I would like to be able to give the Court ample notice if we reach a compromise and the debtor exam will be taken off-calendar. The debtor examination is just 29 days away.
>
> I have just discovered that an additional entire category of bank records is missing from your client's production.

**Mot Ex. 6, p. 2 of 10**

The Wells Fargo E Street Market checking account statements show many transfers to "Saker Enterprise, Inc", starting with the one pictured below from January 2020:



Some of the amounts involved are substantial. The one pictured below is also from January 2020:

| 1/30 | Online Transfer to Saker Enterprise, Inc Ref #Ib07Kfj6St Business Checking This Is The Sale Tax for E Street | 4,829.00 |

Both these transfers were noted by your client or someone in your office, who circled the amounts.

Since the transfers were done online, it would seem that the Saker Enterprise business checking account was also held at Wells Fargo.

It is strange that accounts would be held both in the name of the corporation and in its fictitious business name, separately. Can you explain why two separate checking accounts were maintained for the business?

I see the note in the second line of the January 30 entry above: "This Is The Sale Tax for E Street". So I don't have any issue with that particular transaction. It's just that all these transfers clearly prove the existence of another checking account for which no statements have been provided. I need to see those statements to see if other money was coming into that business and what happened to it.

There are MANY instances of "Saker Ent" in the combined set of statements from 2020 through 2022, as shown by every blue line in this screenshot of the scrollbar in my PDF tool:

**Mot Ex. 6, p. 3 of 10**

Re: SAKER                                                      mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document    Page 58 of 101

I have received statements only for Mr. Saker personally and the E Street Market.

**Mot Ex. 6, p. 4 of 10**

I reported gaps in the card processing statements set on January 29, and then again on our conference call last week: "Only eight of the expected 36 statements were provided".

The only gap in the bank statement production that has been remedied -- the missing Arrowhead statements -- had already actually been remedied in early February but I didn't see the notification.

Please acknowledge receipt of this message and the expected timeline for remedying these gaps in the production.

Please also prepare a sworn statement for your client's family members to sign, to the effect that everything they stated on the last phone call was true and correct under penalty of perjury. If we have another phone call with any such family members, I will request another such statement. This is not substantially different than what they would have had to swear to, had they appeared at a judgment debtor examination and been sworn in as witnesses.

Please impress upon your clients all how much more convenient this online remote process is, in which I have allowed you and your clients to engage, than requiring all of them to appear repeatedly at the courthouse because documents were missing, dragging the process on for more months than it has already dragged on.

Also, in the future, to avoid further delays and frustration, please have your staff confirm with me that I have received any emails with attachments or MyCase notifications of uploaded documents.

Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution of copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

On 2/2/2023 11:36 AM, Carson Firm wrote:

Hello greg , we are getting everything from saker , ive been in contact with his children to get the documents needed. i did inform them we need it asap. i'm trying to get it all to you as soon as possible.

**Mot Ex. 6, p. 5 of 10**

Re: SAKER                                          mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document         Page 60 of 101

Warm Regards,

Yahaira Gagnon

**Office Manager**
The Carson Law Firm

(951) 384-5860 | Thecarsonlaw@gmail.com
3890 11th Street Suite 103 Riverside CA 92501

**WARNING:** This e-mail is covered by the Electronic Communications Privacy Act, 18
United States Code, §§2510-2521 and is legally privileged. It contains information from the The
Carson Law Firm, which may be privileged, confidential and exempt from disclosure under
applicable law. Dissemination or copying of this by anyone other than the addressee or the
addressee's agent is strictly prohibited. If this electronic transmission is received in error, please
notify The Carson Law Firm at (951)384-6850. Thank you.

Create your own email signature

On Thu, Feb 2, 2023 at 10:29 AM Gregg Roberts <gregg@legalsupport-sc.com> wrote:

I received no acknowledgment of my message below from four days ago.

Apparently you have mistaken my respectfulness for weakness. That's a very serious mistake.

I should not have even had to tell you what was missing from your document package. The
Court's order was very clear, and I saw Mr. Carson take notes when Judge Garza issued it.

I have been very patient. I even called Mr. Carson to give him a courtesy reminder on Tuesday,
January 17 -- three days before the January 20 deadline. He informed me on that call that he
had received a box of documents from the client that day or within a few days before that call.
Yet by the 20th I had received nothing!

On the following business day, January 23, I received a voicemail from Chandler informing me
that your office was working with Mr. Saker and Wells Fargo to obtain business and personal
bank statements. All of that work should have been started within a day or two of the January
6 hearing, and should have been finished essentially the same day, and certainly long before
the 20th. I just called the Wells Fargo customer service number and I asked them how long it

**Mot Ex. 6, p. 6 of 10**

Re: SAKER                                                        mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document        Page 61 of 101

would take them to generate 36 monthly statement PDFs. The customer service rep told me that that could be done in the lobby while you wait.

Aside from the preliminary request that was due two weeks after the hearing, I sent you some days ago a courtesy copy of my full Request for Documents which was served on Mr. Saker a year ago. Yahaira posted that document into MyCase, but I have seen no indication that your client and team are aware of the importance of bringing those documents to the April 6 exam. Considering how long it has taken your team to fulfill a more basic document request from just a few sources, I certainly hope you are already working on the full Request. It obviously could require consultation with several more sources than the preliminary request.

Judge Garza is not going to be pleased to hear about this violation of his order, especially on top of the earlier MULTIPLE violations. Even if I don't ask Garza to punish you, I'm not going to cover up this shoddy performance. Garza might punish you on his own motion.
Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution of copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

On 1/29/2023 7:00 PM, Gregg Roberts wrote:

Shirley/Yahaira/All,

I have processed everything that I see in MyCase. Thank you for the ABC license images. According to PERMIT.JPG the license was set to expire at the end of 2020. Is it still valid? If not, how much would it cost to get it reinstated? Is Mr. Saker interested in voluntarily orchestrating a sale of the license in such a way that would maximize the revenue from the sale, as I discussed with Mr. Carson?

As for the document files, I found many duplicated Wells Fargo monthly statements, and many of the statements were out of chronological order. I have remedied that problem at my end as best I can.

**Mot Ex. 6, p. 7 of 10**

However:

    1. The following Wells Fargo business account months are missing:

        April 2020, May 2020, June 2020

    Please provide those to me within three business days.

    2. At the hearing Mr. Saker or one of his sons mentioned that Saker had an account at Arrowhead Credit Union. I see no statements at all from that institution -- presumably 36 months are missing.

    3. I see only business statements in the name of E Street Market, no personal account statements -- presumably 72 statements are missing.

    4. I mentioned to Yahaira by telephone a few days ago that there are no tax returns among these documents. I see four PDF files consisting of correspondence to or from CDTFA, but nothing indicating Mr. Saker's own statements about his profit and loss, cost of goods sold, etc. There should be both personal and corporate tax returns, state and federal, for the three years, so that's 12 tax returns missing. If they are lost, Mr. Saker can get copies from local tax authority offices.

    5. I see only the same spotty coverage of card statements pictured below from five days ago. Only eight of the expected 36 statements were provided. Missing are: 2020-02, -06, -07, 10-12; 2021 all; and 2022-01, -02, and 05-12. If Mr. Saker had a personal card for the same three years, that's another 36 statements.

Please remedy these other gaps within seven business days.

Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution of copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

**Mot Ex. 6, p. 8 of 10**

Re: SAKER                mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document      Page 63 of 101

On 1/24/2023 10:19 AM, Gregg Roberts wrote:

Hi Shirley,

I am renaming the files in a certain way to make it easier to tell whether every month in each series of documents has been provided. You might want to do the same:

📕 Saker Ent Tax and Use 2020-02.pdf
📕 Saker Ent Tax and Use 2020-04.pdf
📕 Saker Ent Tax and Use 2020-05.pdf
📕 Saker Ent Tax and Use 2022-06.pdf
📘 Wells Business 2020-01.pdf
📕 Wells Business 2020-02.pdf
📕 Wells Business 2020-03.pdf
📕 Wells Card 2020-01.pdf
📕 Wells Card 2020-03.pdf
📕 Wells Card 2020-04.pdf
📕 Wells Card 2020-05.pdf
📕 Wells Card 2020-08.pdf
📕 Wells Card 2020-09.pdf
📕 Wells Card 2022-03.pdf
📕 Wells Card 2022-04.pdf

Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

**Mot Ex. 6, p. 9 of 10**

On 1/24/2023 9:33 AM, Carson Firm wrote:

Hello , these are the bank records , thank you so much .

Warm Regards,

## Shirley Ann Claybon

### Office Manager
The Carson Law Firm

(951) 384-5860 | Thecarsonlaw@gmail.com
3890 11th Street Suite 103 Riverside CA 92501

**WARNING:** This e-mail is covered by the Electronic Communications Privacy Act, 18 United States Code, §§2510-2521 and is legally privileged. It contains information from the The Carson Law Firm, which may be privileged, confidential and exempt from disclosure under applicable law. Dissemination or copying of this by anyone other than the addressee or the addressee's agent is strictly prohibited. If this electronic transmission is received in error, please notify The Carson Law Firm at (951)384-6850. Thank you.

Create your own email signature

**Mot Ex. 6, p. 10 of 10**

# Exhibit 7

Subject: SAKER
From: Carson Firm <thecarsonlaw@gmail.com>
Date: 3/30/2023, 9:28 AM
To: Gregg Roberts <gregg@legalsupport-sc.com>

Is there anything else needed for our client Saker?

Warm Regards,

**Shirley Ann Claybon**
Office Manager
The Carson Law Firm

(951) 384-5860 | Thecarsonlaw@gmail.com
3890 11th Street Suite 103 Riverside CA 92501

**WARNING:** This e-mail is covered by the Electronic Communications Privacy Act, 18 United States Code, §§2510-2521 and is legally privileged. It contains information from the The Carson Law Firm, which may be privileged, confidential and exempt from disclosure under applicable law. Dissemination or copying of this by anyone other than the addressee or the addressee's agent is strictly prohibited. If this electronic transmission is received in error, please notify The Carson Law Firm at (951)384-6850. Thank you.

Create your own email signature

**Mot Ex. 7, p. 1 of 1**

# Exhibit 8

## Suspicious Transactions by the Debtor

### *Online Transfers to Saker Enterprise, Inc.*

| Filename | PDF Page | Date | Amount | Notes |
|---|---|---|---|---|
| E Street Market Wells 2020-2022.pdf | 3 | 1/21/2020 | $ 400.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx9110 Ref #Ib07J6Fys2 on 01/21/20 |
| E Street Market Wells 2020-2022.pdf | 19 | 7/14/2020 | $ 394.50 | Online Transfer to Saker Enterprise, Inc Ref #Ib08H536Sp Business Checking Employment Tax for E Street Market |
| E Street Market Wells 2020-2022.pdf | 19 | 7/24/2020 | $ 999.99 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1562 Ref #Ib08Jtqdhc on 07/24/20 |
| E Street Market Wells 2020-2022.pdf | 20 | 7/28/2020 | $ 300.00 | Online Transfer to Saker Enterprise, Inc Business Checkingxxxxxx1554 Ref #Ib08Kfrqj3 on 07/28/20 |
| E Street Market Wells 2020-2022.pdf | 20 | 7/31/2020 | $ 950.00 | Online Transfer to Saker Enterprise, Inc Ref #Ib08Kys3Dp Ref #Ib08Kys3Dp Business Checking Nakaa |
| E Street Market Wells 2020-2022.pdf | 25 | 8/12/2020 | $ 1,500.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1562 Ref #Ib08N36Nt9 on 08/11/20 |
| E Street Market Wells 2020-2022.pdf | 25 | 8/13/2020 | $ 2,500.00 | Online Transfer to Saker Enterprise, Inc Ref #Ib08N94Hg6 Ref #Ib08N94Hg6 Business Checking Payroll |
| E Street Market Wells 2020-2022.pdf | 31 | 9/3/2020 | $ 750.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1562 Ref #Ib08Ryg8Vx on 09/02/20 |
| E Street Market Wells 2020-2022.pdf | 33 | 9/21/2020 | $ 1,800.00 | Online Transfer to Saker Enterprise, Inc Ref #Ib08Vzzjt7 Business #Ib08Vzzjt7 Business Checking Employees Pay |
| E Street Market Wells 2020-2022.pdf | 33 | 9/21/2020 | $ 1,300.00 | Online Transfer to Saker Enterprise, Inc Ref #Ib08Vzzlhw Business #Ib08Vzzlhw Business Checking Employees Pay |
| E Street Market Wells 2020-2022.pdf | 39 | 10/6/2020 | $ 1,600.00 | Online Transfer to Saker Enterprise, Inc Ref #Ib08Yylqdy Business Checking Employees Pay |
| E Street Market Wells 2020-2022.pdf | 41 | 10/26/2020 | $ 300.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1562 Ref #Ib0944Y44L on 10/24/20 |
| E Street Market Wells 2020-2022.pdf | 47 | 11/3/2020 | $ 200.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1554 Ref #Ib095Zxf7V on 11/03/20 |
| E Street Market Wells 2020-2022.pdf | 47 | 11/9/2020 | $ 90.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1554 Ref #Ib0972C3T5 on 11/09/20 |
| E Street Market Wells 2020-2022.pdf | 48 | 11/16/2020 | $ 200.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1554 Ref #Ib097Ykpbm on 11/14/20 |
| E Street Market Wells 2020-2022.pdf | 48 | 11/19/2020 | $ 500.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1562 Ref #Ib098V95Hb on 11/19/20 |
| E Street Market Wells 2020-2022.pdf | 48 | 11/20/2020 | $ 1,000.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx9110 Ref #Ib0995N8Nn on 11/20/20 |
| E Street Market Wells 2020-2022.pdf | 54 | 12/4/2020 | $ 100.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1554 Ref #Ib09Cv4Wc6 on 12/04/20 |
| E Street Market Wells 2020-2022.pdf | 54 | 12/8/2020 | $ 100.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1554 Ref #Ib09Djdkxk on 12/08/20 |
| E Street Market Wells 2020-2022.pdf | 54 | 12/8/2020 | $ 450.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1554 Ref #Ib09Djz7Vy on 12/08/20 |
| E Street Market Wells 2020-2022.pdf | 54 | 12/10/2020 | $ 100.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1554 Ref #Ib09Dvf4G5 on 12/10/20 |
| E Street Market Wells 2020-2022.pdf | 55 | 12/17/2020 | $ 2,500.00 | Online Transfer to Saker Enterprise, Inc Ref #Ib09G7Qcqh Business Checking for Employees Taxes |
| E Street Market Wells 2020-2022.pdf | 73 | 3/16/2021 | $ 600.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1562 Ref #Ib0B2R2Kkc on 03/16/21 |
| E Street Market Wells 2020-2022.pdf | 83 | 5/3/2021 | $ 510.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1554 Ref #Ib0Bdcw2WT on 04/30/21 |
| E Street Market Wells 2020-2022.pdf | 88 | 6/1/2021 | $ 100.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1562 Ref #Ib0BIhwk2Q on 05/29/21 |
| E Street Market Wells 2020-2022.pdf | 113 | 10/19/2021 | $ 400.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx1562 Ref #Ib0Cnmd6H7 on 10/19/21 |
| E Street Market Wells 2020-2022.pdf | 134 | 2/8/2022 | $ 800.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx9110 Ref #Ib0Dk4Kl6C on 02/08/22 |
| E Street Market Wells 2020-2022.pdf | 150 | 5/16/2022 | $ 1,259.00 | Online Transfer to Saker Enterprise, Inc Business Checking xxxxxx9110 Ref #Ib0Fclgbm8 on 05/16/22 |
| | | Count: | $ 28 | |
| | | Total $: | $ 21,703.49 | |

**Mot Ex. 8, p. 1 of 3**

**Suspicious Transactions by the Debtor**

*Cash Withdrawals from Business Account*

| Filename | PDF Page | Date | Amount | Notes |
|---|---|---|---|---|
| E Street Market Wells 2020-2022.pdf | 3 | 1/22/2020 | $ 300.00 | ATM Withdrawal authorized on 01/22 15282 Summit Ave. Fontana CA 0005050 ATM ID 991 8C Card 2646 |
| E Street Market Wells 2020-2022.pdf | 31 | 9/2/2020 | $ 2,000.00 | Withdrawal Made In A Branch/Store |
| E Street Market Wells 2020-2022.pdf | 39 | 10/8/2020 | $ 10.00 | Withdrawal Made In A Branch/Store |
| E Street Market Wells 2020-2022.pdf | 41 | 10/19/2020 | $ 510.00 | ATM Withdrawal authorized on 10/19 O34 W 3rd St San Bernardin CA 0003325 ATM ID 0623B Card 3144 |
| E Street Market Wells 2020-2022.pdf | 66 | 2/1/2021 | $ 523.25 | Non-WF ATM Withdrawal authorized on 01/30 6 W Colton Ave Redlands CA 00381030685677395 ATM ID 00418203 Card 3144 |
| ArrowHead_Bank_Statement_-_Saker_( | 26 | 3/3/2021 | $ 10,004.99 | Withdrawal |
| ArrowHead_Bank_Statement_-_Saker_( | 26 | 3/3/2021 | $ 10,004.99 | Withdrawal |
| E Street Market Wells 2020-2022.pdf | 73 | 3/25/2021 | $ 8,510.00 | Withdrawal Made In A Branch/Store |
| E Street Market Wells 2020-2022.pdf | 73 | 3/26/2021 | $ 10,099.99 | Withdrawal Made In A Branch/Store |
| E Street Market Wells 2020-2022.pdf | 74 | 3/29/2021 | $ 700.00 | ATM Withdrawal authorized on 03/29 28920 Greenspot Rd Highland CA 0007262 ATM ID 9888N Card 3144 |
| E Street Market Wells 2020-2022.pdf | 74 | 3/29/2021 | $ 700.00 | ATM Withdrawal authorized on 03/29 28920 Greenspot Rd Highland CA 0007262 ATM ID 9888N Card 3144 |
| E Street Market Wells 2020-2022.pdf | 74 | 3/31/2021 | $ 2,810.00 | Withdrawal Made In A Branch/Store |
| E Street Market Wells 2020-2022.pdf | 74 | 3/31/2021 | $ 700.00 | ATM Withdrawal authorized on 03/31 28920 Greenspot Rd Highland CA 0007513 ATM ID 9888N Card 3144 |
| E Street Market Wells 2020-2022.pdf | 78 | 4/8/2021 | $ 1,600.00 | Cash eWithdrawal in Branch/Store 04/08/2021 15:52 Pm 28920 Greenspot Rd Highland CA 5685 |
| E Street Market Wells 2020-2022.pdf | 79 | 4/14/2021 | $ 1,000.00 | Withdrawal Made In A Branch/Store |
| E Street Market Wells 2020-2022.pdf | 79 | 4/22/2021 | $ 1,429.34 | Withdrawal Made In A Branch/Store |
| E Street Market Wells 2020-2022.pdf | 84 | 5/24/2021 | $ 800.00 | ATM Withdrawal authorized on 05/24 28920 Greenspot Rd Highland CA 0003050 ATM ID 9883O Card 3144 |
| E Street Market Wells 2020-2022.pdf | 89 | 6/14/2021 | $ 3,139.48 | Withdrawal Made In A Branch/Store |
| E Street Market Wells 2020-2022.pdf | 90 | 6/29/2021 | $ 2,800.00 | Withdrawal Made In A Branch/Store |
| E Street Market Wells 2020-2022.pdf | 90 | 6/29/2021 | $ 2,800.00 | Withdrawal Made In A Branch/Store |
| E Street Market Wells 2020-2022.pdf | 96 | 7/27/2021 | $ 1,000.00 | ATM Withdrawal authorized on 07/27 15282 Summit Ave. Fontana CA 0005164 ATM ID 9870B Card 5685 |
| E Street Market Wells 2020-2022.pdf | 96 | 7/28/2021 | $ 2,960.00 | Withdrawal Made In A Branch/Store |
| E Street Market Wells 2020-2022.pdf | 31 | 9/2/2021 | $ 2,000.00 | Withdrawal Made In A Branch/Store |
| | | Count: | $ 23 | |
| | | Total $: | $ 66,402.04 | |

**Mot Ex. 8, p. 2 of 3**

## Suspicious Transactions by the Debtor

*Payments of Personal Mortgage from Business Account*

| Filename | PDF Page | Date | Amount | Notes |
|---|---|---|---|---|
| E Street Market Wells 2020-2022.pdf | 7 | 2/3/2020 | $ 2,778.65 | Nationstar DBA MR Cooper 200203 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 12 | 3/3/2020 | $ 2,778.65 | Nationstar DBA MR Cooper 200303 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 18 | 7/2/2020 | $ 2,858.65 | Nationstar DBA MR Cooper 200702 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 24 | 8/3/2020 | $ 2,858.72 | Nationstar DBA MR Cooper 200803 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 31 | 9/2/2020 | $ 2,858.72 | Nationstar DBA MR Cooper 200902 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 39 | 10/2/2020 | $ 2,858.72 | Nationstar DBA MR Cooper 201002 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 47 | 11/3/2020 | $ 2,858.72 | Nationstar DBA MR Cooper 201103 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 47 | 11/3/2020 | $ 2,858.72 | Nationstar DBA MR Cooper 201103 0646678656 Jihad Saker 2,858.72 |
| E Street Market Wells 2020-2022.pdf | 54 | 12/2/2020 | $ 2,858.72 | Nationstar DBA MR Cooper 201202 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 60 | 1/5/2021 | $ 2,858.72 | Nationstar DBA MR Cooper 210103 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 67 | 2/12/2021 | $ 2,858.72 | Nationstar DBA MR Cooper 210212 0646678656 Saker Inc |
| E Street Market Wells 2020-2022.pdf | 72 | 3/2/2021 | $ 2,858.72 | Nationstar DBA MR Cooper 210302 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 78 | 4/2/2021 | $ 2,858.72 | Nationstar DBA MR Cooper 210402 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 83 | 5/3/2021 | $ 2,858.72 | Nationstar DBA MR Cooper 210503 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 88 | 6/2/2021 | $ 2,858.72 | Nationstar DBA MR Cooper 210602 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 94 | 7/6/2021 | $ 2,738.53 | Nationstar DBA MR Cooper 210702 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 100 | 8/3/2021 | $ 2,738.53 | Nationstar DBA MR Cooper 210803 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 112 | 10/4/2021 | $ 2,738.53 | Nationstar DBA MR Cooper 211002 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 118 | 11/2/2021 | $ 2,738.53 | Nationstar DBA MR Cooper 211102 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 123 | 12/2/2021 | $ 2,738.53 | Nationstar DBA MR Cooper 211202 0646678656 Jihad Saker |
| E Street Market Wells 2020-2022.pdf | 140 | 3/24/2022 | $ 15,731.40 | Nationstar DBA MR Cooper 220324 0646678656 Jihad Saker |
| | | Count: | $ 21 | |
| | | Total $: | $ 72,144.64 | |

**Mot Ex. 8, p. 3 of 3**

# **Exhibit 9**

RE: In Re Jihad Saker, 6:23-bk-10976-SY          mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document    Page 72 of 101

Subject: RE: In Re Jihad Saker, 6:23-bk-10976-SY
From: Mayra Johnson <MJohnson@mclaw.org>
Date: 5/5/2023, 4:34 PM
To: Gregg Roberts <gregg@legalsupport-sc.com>
CC: Amanda Billyard <abillyard@bwlawcenter.com>, Arturo Cisneros <arturo@mclaw.org>

Good afternoon Mr. Roberts,

Thank you for your email. I am copying the Trustee at his preferred email address to review the below.

Thank you.


Mayra Johnson
Trustee Administrator



3403 10th Street, Suite 714
Riverside, CA 92501
951-682-9705
951-682-9707 (fax)
www.malcolmcisneros.com


Follow our firm at: 


Certified Minority Owned Corporation
Malcolm ◆ Cisneros, A Law Corporation, is an AV rated, regional commercial and civil litigation firm with offices across the Western United States in Phoenix, AZ; Irvine and Riverside, CA; Las Vegas, NV; Lake Oswego, OR; Dallas, TX; Seattle, WA.

**CONFIDENTIALITY NOTICE**

This email message is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. It is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

From: Gregg Roberts <gregg@legalsupport-sc.com>
Sent: Friday, May 5, 2023 4:06 PM
To: AMCTrustee <amctrustee@mclaw.org>

**Mot Ex. 9, p. 1 of 9**

RE: In Re Jihad Saker, 6:23-bk-10976-SY        mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document      Page 73 of 101

Cc: Amanda Billyard <abillyard@bwlawcenter.com>
Subject: Re: In Re Jihad Saker, 6:23-bk-10976-SY

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Trustee Cisneros,

I just left a voicemail with your office pursuant to this matter.

I have seen no reply or phone call in response to the email below.

Please let me know whether you intend to demand the production of additional documents from the debtor Jihad Saker, and if not, why not.

I request copies of all documents you have received, or that you receive from Mr. Saker before the May 17 Meeting, other than those that you are forbidden by law from providing to me.

Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution of copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

On 4/20/2023 6:12 PM, Gregg Roberts wrote:

Trustee Cisneros,

I attended the 341 meeting pursuant to the above-referenced case this past Tuesday morning. Mr. Saker was unable to attend due to alleged illness. The meeting has been continued to May 17 at noon.

The debtor in this case has a judgment of approximately $2.8 million with myself as the judgment creditor (assignee of record) as a result of three wrongful deaths that occurred on his property in 2014. One of the false statements on his petition is that most of his debt is consumer debt. In fact, more than 90% of his debt consists of his judgment debt to

**Mot Ex. 9, p. 2 of 9**

RE: In Re Jihad Saker, 6:23-bk-10976-SY                                    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document    Page 74 of 101

me.

Mr. Saker is making a mockery of the judicial process intended only to benefit honest debtors in the bankruptcy court. As a result, I urge you to demand additional documents from this debtor.

In an effort to work together to ferret out the truth, I further request copies of all of the debtor's documents currently in your possession, or that come into the possession of your office in the future, other than the ones that you are not allowed to give me. I believe this is justified because I already have evidence that the debtor has been squirreling away cash over the last several years. See the attached Excel file, as well as the conveniently processed PDF of bank statements for the last three years from one of Mr. Saker's bank accounts. You can Find text in the document and copy text out of it for your own analysis.

I cannot send the Arrowhead statements via email because the 61 MB file is too large. Please let me know if you would like me to provide the file through Dropbox. Because of chain of custody considerations, I understand that you might prefer to receive the documents directly from the debtor through counsel.

The evidence I have obtained includes twelve instances of "Withdrawal Made In A Branch/Store" totaling $39,588.81 between September 2020 and September 2021, and eight ATM Withdrawals totaling approximately $5,233.25 between January 2020 and July 2021 from the E Street Market account at Wells Fargo. In addition, there were two cash withdrawals of $10,004.99 for the debtor's personal Arrowhead FCU account on the same day, March 3, 2021. Those withdrawals were made close in time to a cash withdrawal of $10,099.99 on March 26, 2021, which is part of the total referenced above. These amounts are more sporadic, and are in much higher amounts, than would be required to maintain enough change in a convenience store cash register to do business. It is essential to my interests, as well as the integrity of this proceeding, that an accounting reveal the disposition of all that cash. If it has been moved for the purpose of preventing assets from being available to creditors, obviously we both need to know about that.

In addition there is a large, suspicious omission in the records production. Mr. Saker was ordered to turn over the past three years of bank records, but he has entirely withheld the statements from one of his business accounts. I discovered the existence of that account by analyzing over 200 pages of statements that he did provide (the "E Street Market" statements). That analysis revealed numerous transfers to that other mystery account (the "Saker Enterprise Inc." account). When I asked Mr. Saker's state court counsel about these omissions, there was no response, and then his bankruptcy petition followed about a week later. I need the 36 months' worth of statements from the Saker Enterprise, Inc.

**Mot Ex. 9, p. 3 of 9**

RE: In Re Jihad Saker, 6:23-bk-10976-SY                    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY     Doc 17     Filed 05/10/23     Entered 05/10/23 14:52:13     Desc
Main Document         Page 75 of 101

account. That account could show even more cash withdrawals, and/or more recent ones than those already identified. It could even reveal the assistance of another hidden account.

Finally, there is clear evidence of commingling of personal and corporate assets in the statements I have reviewed. The commingling includes many payments to Nationstar, which is apparently the company handling Mr. Saker's home mortgage, as well as Spectrum Internet and a satellite TV service for one of his family members. I did not enter all the Nationstar payments into the spreadsheet, but there were approximately $35,000 worth of them in total. Because of that commingling, it may be prudent of you to demand all corporate bank statements as well as personal bank statements.

Finally, Mr. Saker also allowed his store to go into foreclosure, thereby reducing the value of his shares in the corporation. That dissipation of an asset clearly violates one of the key state court orders.

Respectfully,

Gregg Roberts
Judgment Creditor / Assignee of Record

cc: Debtor Counsel Amanda Billyard
--

Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution of copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

**Mot Ex. 9, p. 4 of 9**

RE: In Re Jihad Saker, 6:23-bk-10976-SY                    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document         Page 76 of 101

Subject: RE: In Re Jihad Saker, 6:23-bk-10976-SY
From: Arturo Cisneros <arturo@mclaw.org>
Date: 5/7/2023, 10:27 AM
To: Gregg Roberts <gregg@legalsupport-sc.com>

The OUST provides an interpret to those in need.  We will have the ability to request same if necessary and it usually doesn't take very long to get one on the line.

Very truly yours,

Arturo M. Cisneros



Inland Empire
3403 10th Street
Suite 714
Riverside, CA  92501
(951) 682-9705
Orange County
2112 Business Center Drive
Irvine, CA 92612
(949) 252-9400 Ext. 210
www.malcolmcisneros.com

**CONFIDENTIALITY NOTICE**
*This email message is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged.  It is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.*

From: Gregg Roberts <gregg@legalsupport-sc.com>
Sent: Sunday, May 7, 2023 10:20 AM
To: Arturo Cisneros <arturo@mclaw.org>
Subject: Re: In Re Jihad Saker, 6:23-bk-10976-SY

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**Mot Ex. 9, p. 5 of 9**

Mr. Cisneros,

Thank you so much for responding to my message on Sunday.

I am not an attorney, but I have been enforcing judgments in Southern California for 10 years now. I have held my own against very aggressive defense counsel, obtaining substantial compromises in all three of my bankruptcy battles thus far.

I am in the process of finalizing my own motion to dismiss the Saker case as we speak. The two reasons that should most interest your office are (1) the hiding of the second business account -- the one in the name of Saker Enterprise, Inc. -- and (2) cash withdrawals from the E Street Market account in the three years prepetition totaling $44,822.06 -- cash that appears to have been dissipated. I see no reason to assume that cash was not also withdrawn from the missing account -- perhaps much more than $44,000. I found a criminal record in San Bernardino against Mr. Saker for running an unlicensed gambling establishment. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*[GR: Personal information redacted from publicly filed document]*

I am in the process of entering more information into the spreadsheet that I sent you earlier that will better illustrate the details of the suspicious transactions. Of course you will be served with a copy of the Motion, to which the spreadsheet will be an exhibit. I hope to file and serve the motion by tomorrow or Tuesday at the latest, but that doesn't give you much time For more records to be demanded, obtained, and produced to all of us in time for the May 17 meeting.

In view of the information that I already sent you, could you tell me why you have not already demanded statements from the Saker Enterprise account? Mr. Saker is apparently the sole shareholder, and he certainly controlled the funds in both accounts. He also used corporate funds to pay personal bills. I understand that commingling does not automatically indicate bankruptcy fraud, but it is another indicator of Saker's disregard for the law and for proper business procedures. And all of the conduct I have described above casts doubt on Saker's credibility as a witness regarding his own financial affairs.

A final note -- at the last state court proceeding In January, Saker requested that an Arabic translator be provided for him at the debtor examination that was to take place April 7. If he has not requested an Arabic translator for either of the creditors meetings, please consider the implications. Either he doesn't really need a translator, or he plans on stalling for time again on May 17. It will be unacceptable for him to tell us at the second 341 meeting that he doesn't understand my questions because of a language barrier and he needs more time to get a translator. He has to request a translator NOW -- assuming it is not already too late -- or forfeit the right to make any excuses about his English proficiency. I will ask my questions at a reasonable speed, but I will not dumb my questions down. If the Trustee's office has no obligation or funds to provide an Arabic translator, or one is not available for May 17, Mr. Saker will need to provide his own translator at his own expense, or again

forfeit any related rights.

Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution of copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

On 5/7/2023 9:40 AM, Arturo Cisneros wrote:

Thanks, Mayra.

Mr. Roberts:  are you an atty?  If not, I would suggest that you consult/retain a bk atty as I, as trustee in this case, am prohibited from providing legal advice.    Please see the deadlines set forth in the 341(a) notice as your rights as a creditor will be affected.  I believe I continued this matter to an hour (only matter set) where you and/or your counsel will have an opportunity to question the Debtor under oath.  If the Debtor fails to appear again, I will ask the clerk to dismiss the case.  In the meantime, if you discover undisclosed assets, please let me know.  I am in the office today until 4ish if you wish to discuss further, but please note that I cannot provide legal advice.

Very truly yours,

Arturo M. Cisneros



Inland Empire
3403 10th Street
Suite 714
Riverside, CA  92501
(951) 682-9705
Orange County
2112 Business Center Drive
Irvine, CA 92612
(949) 252-9400 Ext. 210
www.malcolmcisneros.com

**Mot Ex. 9, p. 7 of 9**

RE: In Re Jihad Saker, 6:23-bk-10976-SY                    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document        Page 79 of 101

***CONFIDENTIALITY NOTICE***
*This email message is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. It is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.*

From: Mayra Johnson <MJohnson@mclaw.org>
Sent: Friday, May 5, 2023 4:35 PM
To: Gregg Roberts <gregg@legalsupport-sc.com>
Cc: Amanda Billyard <abillyard@bwlawcenter.com>; Arturo Cisneros <arturo@mclaw.org>
Subject: RE: In Re Jihad Saker, 6:23-bk-10976-SY

Good afternoon Mr. Roberts,

Thank you for your email. I am copying the Trustee at his preferred email address to review the below.

Thank you.


Mayra Johnson
Trustee Administrator



3403 10th Street, Suite 714
Riverside, CA 92501
951-682-9705
951-682-9707 (fax)
www.malcolmcisneros.com



Follow our firm at: 


Certified Minority Owned Corporation
Malcolm ◆ Cisneros, A Law Corporation, is an AV rated, regional commercial and civil litigation firm with offices across the Western United States in Phoenix, AZ; Irvine and Riverside, CA; Las Vegas, NV; Lake Oswego, OR; Dallas, TX; Seattle, WA.

**CONFIDENTIALITY NOTICE**

**Mot Ex. 9, p. 8 of 9**

RE: In Re Jihad Saker, 6:23-bk-10976-SY                    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document    Page 80 of 101

This email message is covered by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. It is intended only for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

**Mot Ex. 9, p. 9 of 9**

# Exhibit 10

1

```
1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                 FOR THE COUNTY OF SAN BERNARDINO

3      DEPARTMENT S11          HON. J. DAVID MAZUREK, JUDGE

4      THE PEOPLE OF THE            )
       STATE OF CALIFORNIA,        )
5                                   )
                          Plaintiff, )
6                                   )
            v.                      )Case No. FSB1402378
7                                   )
       TRAVON LEWIS STOKES,         )Pages: 1 through 108
8                                   )
                          Defendant. )
9      _____)

10
              REPORTER'S TRANSCRIPT OF ORAL PROCEEDINGS
11            TRIAL TESTIMONY OF TRAVON LEWIS STOKES
                       DECEMBER 11, 2017
12

13     APPEARANCES:

14         For the People:        JASON ANDERSON
                                  District Attorney
15                                By:  DONNA KAUFFMAN
                                  Deputy District Attorney
16                                303 West Third Street
                                  Fifth floor
17                                San Bernardino, CA 92415

18

19         For the Defendant:     THOMAS W. SONE
                                  Public Defender
20                                By:  DANIEL MESSNER
                                  Deputy Public Defender
21                                323 Court Street
                                  San Bernardino, CA 92415
22

23

24

25

26

27         Reported by:          Brenda Elia, C.S.R.
                                 Official Reporter, C-11830
28
```

**Mot Ex. 10, p. 1 of 7**

*** PHOTOCOPYING OF TRANSCRIPT PROHIBITED PURSUANT ***
*** TO GOVERNMENT CODE SEC 69954 (d) ***

1                                    SESSIONS

2

3                                                                PAGE

4   DECEMBER 11, 2017
      AM SESSION                                                  5
5          Testimony of Travon Lewis Stokes                      6

6

      PM SESSION                                                  89
7          Testimony of Travon Lewis Stokes continued            89

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mot Ex. 10, p. 2 of 7**

1    Q   Okay.  What do you do as a result of this?

2    A   At -- it's something that broke me down, like, completely

3    on top of everything else I was already dealing with.  He was

4    real close to me.  I don't know.  I never had anything that hit

5    me that hard.  I went into drugs.  I started drinking more and

6    I was just kind of lost at that time.

7    Q   How about your -- anything else?  Did you do anything else

8    in response to that, you know, you hadn't previously done

9    frequently?

10   A   Yes.  We were pretty much together all the time, like, you

11   see him; you see me.  So the way -- the way it happened I

12   just -- I couldn't understand why, you know -- why someone did

13   what they did to him so it kind of put me in a -- I was kind of

14   nervous and scared not knowing what happened or why or if

15   someone was after me as well.  So I end up finding someone who

16   had a gun, and I purchased it for protection.

17   Q   Okay.  So at this point it's 2014, you're a felon; right?

18   You have a felony conviction?

19   A   Yes.

20   Q   So -- I mean, you're not supposed to have a gun; right?

21   A   Correct.

22   Q   So where did you buy this gun?  Do you remember where you

23   bought it?

24   A   I bought it in Hemet from an unknown person I just

25   happened to get in contact with.

26   Q   Okay.  And did you buy it with bullets in it?  'Cause I'm

27   assuming if you can't buy a gun as a felon, you can't buy

28   bullets?

**Mot Ex. 10, p. 3 of 7**

*** PHOTOCOPYING OF TRANSCRIPT PROHIBITED PURSUANT ***
*** TO GOVERNMENT CODE SEC 69954 (d) ***

1    well.

2      Q   Okay.  So you get to the Hookah Lounge.  And do you see

3    them?  Do you see Alex?  Do you see the rest of the people?

4      A   When I pulled up, I noticed their car.  We pulled in, and

5    I backed into the, I believe, the first stall to my left side

6    as soon as I pulled into the parking lot, and they were across

7    the way in the other stalls.

8      Q   Okay.  Do you remember if you parked with your --

9    backwards into the stall so you could drive straight out or did

10   you park in the stall?  I normally do it where I just pull in.

11     A   I backed in.

12     Q   You backed into the stall?

13     A   Yes.

14     Q   Okay.  When you got out of the car, what did you do?

15     A   We got out of the car.  I went to my trunk and I grabbed

16   the gun and put it in my waistband, and I walked across to

17   where Alex and Alfred were.

18     Q   Okay.  Now, we talked about it a little bit.  Why did you

19   get the gun?

20     A   As I said, I always kept it on me for my protection after

21   my friend, and I also knew that I was gonna be able to walk

22   into the Hookah Lounge without being patted down.

23     Q   Because why?

24     A   Because Suav's family owned the place.  He came out there

25   to meet us and basically walked us in, and I had a bottle of

26   alcohol with us.  He took that in.

27     Q   What type of alcohol did you have with you?

28     A   Serrat.

*** PHOTOCOPYING OF TRANSCRIPT PROHIBITED PURSUANT ***
*** TO GOVERNMENT CODE SEC 69954 (d) ***

1    Q   What's that?

2    A   It's a vodka.

3    Q   Okay.  You had a bottle of vodka.  Is that another one of

4    those regular-store size vodkas or plain size or pint?

5    A   Same size bottle.

6    Q   Okay.  So you get out of the car.  You get your gun.  This

7    time you remember putting it in your waistband?

8    A   Yes.

9    Q   I know it's been a while back.  Are you sure it's in your

10   waistband?

11   A   Yes.

12   Q   What do you do next?

13   A   We waited for Suav to come out, and we walked in.  We

14   followed him in there.  And he told the security at the front

15   that we were with him, and we all walked in.

16   Q   How long did you spend out in the parking lot?

17   A   Probably 10, 15 minutes at the most.

18   Q   What did you do while you were out there?

19   A   Just small talked with my cousin.  We smoked a blunt, I

20   believe, some marijuana, and then we went in.

21   Q   Is a "blunt" marijuana?

22   A   That's a cigar basically we fill with marijuana.  That's

23   what we call it, a blunt.

24   Q   So you had some of that.  You're out there for about 15

25   minutes and you go in the club?

26   A   Correct.

27   Q   What time is this?

28   A   Probably a little after midnight close to 1:00, maybe.

**Mot Ex. 10, p. 5 of 7**

*** PHOTOCOPYING OF TRANSCRIPT PROHIBITED PURSUANT ***
*** TO GOVERNMENT CODE SEC 69954 (d) ***

1   Q  How long do you stay in the club?

2   A  We're there until closing.

3   Q  What time did it close?

4   A  They usually close at 4:00, but they had a nice little

5   crowd.  There was no problems or anything in there so they left

6   it open 'til like 4:30.

7   Q  When you're outside in the parking lot, how many people

8   were out there?

9   A  After the club closed?

10  Q  No.  Before you go in.  How many people in the parking

11  lot?

12  A  I'm gonna say about 15 to 20 people were out there.

13  Q  What were they doing out there?

14  A  Just pulling up like we were I believe, either about to go

15  in or coming out to their cars.  I didn't really pay too much

16  attention to the crowd at the time.

17  Q  When you go in, Suav takes you in.  What do you do when

18  you go in?  First thing?

19  A  We walk to -- it's a small place.  We walk to the back.

20  It's a small room, like, in the back.  I believe it's like an

21  employee -- probably for employees.  We go to the back.  We

22  grabbed some Styrofoam cups and we pour up some cups.  He had

23  some cocaine.  We had some cocaine.  We do more drugs back

24  there, fill up our cups and then walk into the Hookah Lounge.

25  Q  Was this like an office in the back or a lounge?  When I

26  think of a club this is an employee area, not something that

27  people in the club go to?

28  A  No.  There's -- at the very back, I believe, there's a

**Mot Ex. 10, p. 6 of 7**

*** PHOTOCOPYING OF TRANSCRIPT PROHIBITED PURSUANT ***
*** TO GOVERNMENT CODE SEC 69954 (d) ***

```
1    bathroom and then there's another door.  It's just a small room
2    back there.
3      Q  Okay.  How big -- let's say, take the dance floor in the
4    Hookah Lounge area.  Is it bigger than this room or smaller
5    than this room?
6      A  It's probably about this size, outside the bathroom and
7    the small room in the back.
8      Q  Did they have a bar?
9      A  No.
10     Q  They serve alcohol?
11     A  No.
12     Q  The only way you get in alcohol was for you to sneak it
13   in; right?
14     A  Yes.
15     Q  And you were able to do that with the -- of somebody that
16   you knew that worked there?
17     A  Yes.
18     Q  So the club is about this big, mostly a dance floor.  Do
19   they have couches?  What does the club look like?
20     A  The middle section is pretty much mostly a dance floor.
21   There's a few couches along the left and the right side of the
22   walls, and they have the little hookahs set up where people
23   smoke hookah.
24     Q  Okay.  As far as anything else -- Ms. Winfrey said there
25   was a stripper pole in there; right?
26     A  Yeah, there's a small dance floor right in front of the DJ
27   where the DJ is at, and there's a stripper pole on the dance
28   floor.
```

**Mot Ex. 10, p. 7 of 7**

*** PHOTOCOPYING OF TRANSCRIPT PROHIBITED PURSUANT ***
*** TO GOVERNMENT CODE SEC 69954 (d) ***

# Exhibit 11

Re: Jihad Saker's improper BK filing                    mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document    Page 90 of 101

Subject: Re: Jihad Saker's improper BK filing
From: Amanda Billyard <abillyard@bwlawcenter.com>
Date: 3/21/2023, 12:16 PM
To: Gregg Roberts <gregg@legalsupport-sc.com>

Hello Gregg,

Please provide me any information you have that shows this judgement against my client is for gross
negligence, malicious conduct or fraud.
A complete schedule of my client's assets will be revealed upon the completion of the bankruptcy
filing.
Also, consumer v/ non-consumer debts only matters when completing a means test, it has no bearing
on whether or not a debt is discharged for a personal debtor.

Thank you,

Amanda Billyard
Attorney at Law
Financial Relief Law Center
1200 Main St., Suite C
Irvine, CA 92614
Direct Line: 714-442-3349
Fax: 714-361-5392

*This electronic message and its attachments (if any) are intended solely for the use of the intended recipient(s). In
addition, this message and the attachments (if any) may contain information that is confidential, privileged, and exempt
from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from
reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. Delivery of this
message to any person other than the intended recipient is not intended to waive any right or privilege. If you have
received this message in error, please promptly notify the sender by reply electronic message, delete this message
from your system and destroy all copies of the message. Financial Relief Law Center is a Debt Relief Agency and
helps consumers file bankruptcy petitions to obtain relief under the bankruptcy code.*

On Tue, Mar 21, 2023 at 10:54 AM Gregg Roberts <gregg@legalsupport-sc.com> wrote:

**Mot Ex. 11, p. 1 of 3**

Re: Jihad Saker's improper BK filing        mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document      Page 91 of 101

Ms. Billyard,

I am surely the largest creditor of your new client Jihad Saker.

I am writing to urge you to voluntarily dismiss your client's ill-advised Chapter 7 filing. It violates several rules, and is only going to hurt Mr. Saker and his family's efforts to protect his interests AND their stated intention to provide something for my assignors, two mothers who lost their sons in a wrongful death shooting on your client's premises in 2014.

With your approval, your client checked box 16a, falsely indicating that most of his debts are consumer debt. That's clearly not true. Most of my debtor's debt consists of the two judgments that have been assigned to me with an aggregate value including interest of approximately $2.8 million. There's no way he has consumer debt anywhere near that figure. This makes your client ineligible for relief under Chapter 7. The filing of the petition with that box checked is a violation of several rules including the rules of professional conduct. Would you like to explain to me why that box was checked?

The cause of action in state court was premises liability, but if the evidence supports it I will pursue an adversary proceeding for nondischargeability for willful and malicious injury. Gross negligence satisfies that standard. One of the bereaved mothers remembers testimony from the shooter to the effect that Mr. Saker was his friend and allowed the shooter to enter and remain on the premises with a gun that night at the Hookah Lounge. I am about to order the transcript and other records from the criminal case. Discovery alone in an AP could cost $10,000 in costs and fees.

Your client also understated his assets. He has been living at the same house for many years and I believe that the deed records show no reverse mortgages. I believe he has much more equity than $50,000. The possible exemption is irrelevant.

This is an unusual case in which the bankruptcy filing will probably accomplish nothing but cost your client's family more money. I have been in discussions with the debtor's state court attorney, Eugene Carson (cc'd here), on and off for about a year now. I indicated my interest in a settlement, conditioned on getting full disclosure of assets and income that your client had to work with. Your client was ordered by the state court judge to produce all records on a short list within two weeks. Not only was that first deadline missed, but after considerable email and telephonic communication, I discovered transfers from one of Mr. Saker's business accounts to another account at the same bank for which ZERO statements had been provided. When I brought that to the attention of Mr. Carson's office, they at first promised to work with the family to address the omission. But within a few days I received notice of the bankruptcy filing. This is evidence of bad faith negotiation that is unlikely to be appreciated by the state court or the bankruptcy court. I have the full history of all the emails where I had to keep telling your clients what they hadn't given me, as if I was their paralegal.

In short, your client is in contempt, and I intend to move for relief from the automatic stay so that I can finish what I started in the state court. Your client comes into the bankruptcy court with unclean hands, not only because of the bad faith negotiation and contempt of the state court order, but also because of the incorrect statements in the bankruptcy petition.

If my motion is denied, I will simply conduct a Rule 2004 examination requesting all the same documents. With

**Mot Ex. 11, p. 2 of 3**

both requests I will document for Judge Yun the previous multiple instances of contempt committed by your client. Not only did your client violate the court order directing him to produce records within two weeks of the hearing; he also reduced the value of his shares in his corporation by stopping the mortgage payments, triggering foreclosure.

There is no legitimate purpose to be served by you charging your client and his family for significantly more work in the bankruptcy court.

I am a practical and kind person. I don't know what led Mr. Saker and his family to decide to stop working towards an agreement, but I have done nothing to justify them choosing to pay you instead of paying me and, through me, the mothers who lost their sons on your client's property. If your client and his family choose to keep resisting full disclosure of the records to which I'm entitled, they will in all likelihood end up paying more than they would've had to pay if they just kept going to comply with the state court document production order and negotiate a settlement in good faith.

*[GR: Personal information redacted from publicly filed document]*

Again, I am willing to pick up where we left off in terms of reasonable settlement, but I cannot in good conscience do so without your client putting all his cards on the table.

--
Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution of copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

# Exhibit 12

Mr. Saker's supplemental filing　　　　　　　　　　　mailbox:///C:/Users/Gregg%20Roberts/AppData/Roaming/Thun...

Case 6:23-bk-10976-SY　　Doc 17　　Filed 05/10/23　　Entered 05/10/23 14:52:13　　Desc
Main Document　　　Page 94 of 101

Subject: Mr. Saker's supplemental filing
From: Gregg Roberts <gregg@legalsupport-sc.com>
Date: 4/5/2023, 8:20 PM
To: Amanda Billyard <abillyard@bwlawcenter.com>


Amanda,

I have reviewed Mr. Saker's supplemental filing of March 28 (DE #11). I see several issues that require some attention from you.

1. The false statement about most of Mr. Saker's liabilities consisting of consumer debt has not been corrected. In fact, Mr. Saker has doubled down on that statement in this latest filing (p. 2, Item 7). I understood your previous email response about this issue as you telling me that false statement doesn't matter, because the only purpose of the question of the nature of the liabilities is whether Mr. Saker must pass the means test. You could be right. I haven't taken the time to research the question. However, I'm not aware of false statements in a bankruptcy filing being forgiven because of the filer's understanding of the purpose of the question. I count only about $6000 in debts other than my two judgments. That is considerably less than 1% of the total amount of my two judgments.

I also don't see how you calculated the interest on the judgments. In round numbers, 10% per year since April/May 2019 is $400,000 accrued on each judgment for a total of $2.8 million.

2. One of my judgments against Mr. Saker is listed as secured while the other is listed as unsecured (p. 2, Items 2 and 3). In fact, both of my judgments are secured (though of course not by assets equal to the full amount due). The state court required me to complete two separate abstracts of judgment for each of the two judgments that were entered in the case, on different dates for different amounts. I recorded one abstract right after the other in the San Bernardino Recorder's office, as recording #'s 2022-0295901 and 2022-0295902. Why would you say that one of my judgments is secured while the other is not?

3. I would like to see a copy of the 3/16/23 appraisal of Mr. Saker's residential property. Would you be willing to provide that to me a few days before the first meeting of creditors?

4a. How was the $470,000 homestead exemption figure (Schedule C, p. 1) arrived at?

4b. How do you reconcile that figure with the answer "No" to "3. Are you claiming a homestead exemption of more than $189,050?" (Schedule C, p. 2)?

5a. On Schedule D, p. 1, my street number is given incorrectly as 247. It is given correctly elsewhere as

**Mot Ex. 12, p. 1 of 2**

Case 6:23-bk-10976-SY    Doc 17    Filed 05/10/23    Entered 05/10/23 14:52:13    Desc
Main Document    Page 95 of 101

43430.

5b. Also on Schedule D, p. 1, "Date debt was incurred" is incorrectly given as 8/29/22. The debt underlying the two judgments was incurred in April and May 2019. I acquired the Lawler judgment in November 2020, and the Johnson judgment probably in August 2022. But the date I acquired it is not the date it was incurred.

6. (throughout) The name of Mr. Saker's corporation is Saker Enterprise, Inc., not Saker Enterprises, Inc. :

| Entity Information | Initial Filing Date | Status | Entity Type | Formed In | Agent |
|---|---|---|---|---|---|
| SAKER ENTERPRISE, INC (3951045) | 10/03/2016 | Active | Stock Corporation - CA - General | CALIFORNIA | JIHAD SAKER |

7. What is the purpose of the lease with Keechung Lee in Phelan? (PDF p. 22)

8. The health insurance cost of $1398 a month seems excessive given that Mr. Saker is completely financially dependent on his family. He is eligible for free or low-cost healthcare than that. Reducing or eliminating that expense would provide more money for the family to provide a decent settlement for the bereaved mothers ... and for your fees incurred dealing with my concerns.

Also, please acknowledge receipt of my request for Mr. Saker's last set of tax returns.

--
Gregg Roberts
http://legalsupport-sc.com
Legal Support Services of Southern California
43430 E. Florida Ave #F-293
Hemet CA 92544
951-330-4450

The information contained in this e-mail message is privileged and confidential information, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution of copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone at 951-330-4450 or reply by e-mail and delete or discard this message.

**Mot Ex. 12, p. 2 of 2**

# Declaration of Gregg Roberts

Gregg Roberts
43430 E Florida Ave Ste #F-293
Hemet CA 92544
951-330-4450
gregg@legalsupport-sc.com
Assignee of Record and Judgment Creditor, Pro Se

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

In re Jihad Saker,

Debtor

Case No.: 6:23-bk-10976-SY

Chapter 7

**DECLARATION OF GREGG ROBERTS**

    I am over the age of 18 years and competent to make this Declaration. I have personal knowledge of the matters herein, other than those indicated as being known by information and belief, and I would and could competently testify about them if called to do so.

    All facts stated in this Motion are true and correct, to the best of my knowledge, information, and belief. I believe that the motion is written clearly enough to enable this Court to determine which facts Roberts has personal knowledge of, and which ones are presented on information and belief, and on what facts or documents the latter are based. Roberts, working diligently as a pro se litigant, has run out of time to keep working on this motion packet. Accordingly, he respectfully requests that the Court accept this somewhat generic version of a

Declaration. Otherwise Roberts would have to take the time to scour nearly 30 pages to copy and paste facts out of the Motion specifically attesting to each fact. Roberts will be happy to answer, at the hearing, any questions that the Court might have on this issue.

All exhibits to this Motion are true and correct copies of the documents that they purport to be.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Signed at Hemet, California, this 9th day of May, 2023.

_____

Gregg Roberts, Assignee of Record / Judgment Creditor

# Proposed Order

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

In re Jihad Saker,

Debtor

Case No.: 6:23-bk-10976-SY

Chapter 7

## ORDER

This Court, having considered Assignee Gregg Roberts' Motion for Dismissal; the accompanying Memorandum of Points and Authorities; and Declaration in support, and any other relevant documents and relevant testimony, hereby GRANTS the Motion.

Accordingly, the bankruptcy petition in this case is hereby DISMISSED.

Dated: _____

_____

Hon. Scott Yun
United States Bankruptcy Court

ORDER

1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

43430 E. Florida Ave. #F, Hemet CA 92544

A true and correct copy of the foregoing document entitled (*specify*):  NOTICE OF MOTION AND MOTION FOR DISMISSAL; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF; with Declaration of Gregg Roberts, and Proposed Order (100 pages with exhibits)

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

I have no access to CM/ECF.

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)  05/09/2023 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor Counsel: Amanda Billyard, Financial Relief Law Center, 1200 Main St, Ste C, Irvine, CA 92614-6749.
Debtor: Jihad Saker, 1137 W. 17th St., San Bernardino, CA 92411
Hon. Scott Yun, United States Courthouse, 3420 Twelfth Street, Riverside, CA 92501-3819

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 05/09/2023 | *Faith Munson* | *Faith Munson* |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.