Gregg Roberts
43430 E Florida Ave Ste #F-293
Hemet CA 92544
951-330-4450
gregg@legalsupport-sc.com
Assignee of Record and Judgment Creditor, Pro Se

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

|  |  |
|---|---|
| In re Jihad Saker,<br><br>Debtor | Case No.: 6:23-bk-10976-SY<br>Chapter 7<br><br>**REPLY IN SUPPORT OF**<br>**MOTION FOR DISMISSAL**<br><br>Date/Time: June 8 at 9:30 AM<br>Courtroom: 302<br>Judge: Hon. Scott Yun<br>United States Courthouse<br>3420 Twelfth Street<br>Riverside, CA 92501-3819<br><br>[Filed Concurrently with Declaration of Gregg<br>Roberts and Exhibits] |

REPLY IN SUPPORT OF MOTION FOR DISMISSAL

1

TABLE OF CONTENTS

A.  SUMMARY ....................................................................................................3

B.  MISREPRESENTATIONS IN THE RESPONSE.......................................................3

1. The Response Misrepresents the Nature of the Prejudice ...........................................3

2. The Response Misrepresents the Timeline and Lies by Omission to Make Its Relitigation and Good Faith Arguments..........................................................................................4

3. The Response Misrepresents the Nature of the Unreasonable Delay...........................7

4. The Response Misrepresents the Nature of Business Names and Accounts ...............7

5. The Response Presents Unsupported Conclusory Statements by Counsel.................10

6. The Response Assigns Unjustified Meaning to the Report of No Distribution..........10

7. The Response Fails to Comply with Many Key Rules..............................................13

C.  CONCLUSION ...............................................................................................15

## A. SUMMARY

The Response misrepresents several key points in Roberts motion. It also fails to comply with multiple rules, including—crucially—the requirement to reasonably investigate all factual contentions before signing and filing a document, and to support factual allegations by declaration. The Response is so seriously deficient that it should be stricken, or at least disregarded, and Roberts' Motion should be granted.

## B. MISREPRESENTATIONS IN THE RESPONSE

### 1. The Response Misrepresents the Nature of the Prejudice

**Response:** "Even if Debtor caused an unreasonable delay, Roberts cannot show how he would be prejudiced, since there aren't (and haven't been) any assets available for distribution." 4:7-9.

**Motion:** "Counsel Carson and a family member of Saker indicated that Saker had very little to work with. However, they also indicated that family members were interested in helping their father reach a compromise with Roberts to get their father out of trouble with the Court and to give the bereaved mothers something after all this time." 6:7-11.

Roberts' attempts to enforce the promise and the court order to deliver documents and make an offer cost Roberts time and money that could have been spent on other cases. It also caused the bereaved mothers the emotional distress of once again having their hopes dashed for some small amount of money as compensation for the untimely, brutal loss of their three sons. As his predecessors-in-interest, the bereaved mothers' disappointment constitutes additional prejudice to Roberts.

Roberts kept wondering why Saker was not filing for bankruptcy protection. The only explanation Roberts could think of, was that Saker had nonexempt assets that he wanted to retain instead of giving them up toward the satisfaction of the judgment. That theory was consistent with Saker's repeated refusal to produce documents in connection with the judgment debtor examinations and court orders. Saker's first promise to produce statements from ALL accounts within two weeks of the informal agreement between the parties which was made in February 2022 (not 2023; see below).

Saker was receiving legal counsel in regard to Roberts' collection efforts as early as February 2022. If he was going to file for bankruptcy protection rather than make an offer, soon after that date was the time to do it, not to string Roberts along for 15 months and *then* file. Even without counsel, everyone is on constructive notice of what the law says, and someone with Saker's level of business and life experience certainly had actual knowledge that bankruptcy was an option for him. He could even have filed for bankruptcy protection as soon as he was sued by the bereaved mothers in 2015, or even immediately after the murders were committed on his business property, and he almost certainly knew that, too.

*2. The Response Misrepresents the Timeline and Lies by Omission to Make Its Relitigation and Good Faith Arguments*

**Response:** "Sometime in mid-2022, Roberts obtained an order for a Debtor's Exam for which Debtor obtained counsel in an effort resolve this matter." 2:6-7. "Roberts first initiated a post judgment examination of Debtor in late 2022. Roberts set a court date for January 6, 2023

at which time his motion for contempt against Debtor was denied." 3:21-23. "Debtor first contacted bankruptcy counsel on February 28, 2023. The fact that Debtor complied with Roberts document request to the best of his ability, and remained in settlement negotiations and communication with Roberts up until March of 2023, shows his good faith." 4:18-21. "Roberts is now attempting to relitigate this issue in the Bankruptcy Court and should be preempted from doing so under the theory of res judicata and issue preclusion. If the CA State Court did not find grounds to hold Debtor in contempt based on unreasonable delay or bad faith, then the Bankruptcy Court should not find grounds to dismiss this case for the same reasons." ... 5: 11-15.."

**Reply:** The state court register of actions contradicts the first and second sentences in the passage above. The Hearings section shows "ORAP - Examination of Judgment Debtor" with a date of 2/1/2022. Ex. 1, p. 2, bottom row. That was when Saker was *first* represented by counsel (Carson), who stated Saker's intent to make some kind of offer, and negotiated a continuance so that Carson could get up to speed and review the documents before producing them. It was on *that* date—not on any date in 2023—that Roberts *first* agreed to let Saker have two weeks to produce the documents most likely to be useful. They were to be sent to Roberts' private mailbox, with the remainder to be brought to the continued examination, which was set for April 20, 2022. No documents ever arrived. So the clock for production and "good faith" communication started running *more than a year before* "Debtor first contacted *bankruptcy* counsel" [emphasis added].

At an April 13, 2022 hearing, Roberts agreed to let the Court take the April 20 examination off-calendar because of the lack of communication from Saker and Carson. Roberts did not expect Saker to appear, and did not want to waste his own time appearing when the

other side wasn't going to appear. Roberts worked the Argent side of the case and on other

cases, giving Saker more time to come to his senses. But finally Roberts scheduled and attended

the OSC hearing on January 6, 2023, and Saker showed up with Carson again.

The state court's denial of Roberts' request for a finding of contempt that day was based

on the state court's assessment of Saker's conduct *up to that time*. Roberts is not trying to

relitigate *that* denial of a finding of contempt. Roberts' Motion makes perfectly clear that Saker

dirtied his hands by disregarding *yet another* court order: the one issued to him orally in the

presence of counsel Carson and Saker's family *at the very same hearing* where Judge Garza

ordered the issuance of a bench warrant against Saker, but *gave him one more chance to avoid

being held in contempt*. It was at that hearing that Judge Garza AGAIN ordered Saker to deliver

bank records to Roberts within two weeks of that hearing date. *This is documented in Exhibit A

to Saker's own Response!* Underline: It is Saker's disobedience of *that* court order that Roberts now most

specifically complains of, which has made Saker's hands even more unclean than they were

before. THAT contemptuous conduct has never been adjudicated as such, because of the

automatic stay.

Saker was receiving assistance both from his previous counsel and his own family to

produce the bank records and come up with an offer in compromise. *Motion*, 7:25-26–8:1-4. His

failure and refusal to produce all the required records over a period of more than one month

after the LAST order to produce them, despite all that assistance, is not consistent with a good

faith effort.

*3. The Response Misrepresents the Nature of the Unreasonable Delay*

**Response:** "There's no evidence that Debtor has hindered or delayed Roberts…."
7:20-21.

**Reply:** Roberts does not claim that *he* was delayed. Roberts' Motion cited 11 USC

707(a), which provides for the penalty of dismissal for "unreasonable delay *by the debtor*

*[emphasis added]* that is prejudicial to creditors," not delay of collection *per se*. Saker's

promised offer in compromise has not been delayed; it has never been made at all. It is the delay

in filing for bankruptcy protection, finally making official Saker's "change of purpose to the

injury of another," that was unreasonable and prejudicial.

*4. The Response Misrepresents the Nature of Business Names and Accounts*

**Response:** "E Street Market is a DBA for the Debtor. See Exhibit "C." Accordingly, the
transfers from E Street Market to Saker Enterprise, Inc. cannot be construed as transfers to
hinder or delay payment to creditors, instead, these transfers show Debtor putting his own
money into the business. This further supports the fact that Debtor did not attempt to hinder,
delay or devalue the company, to the contrary, Debtor continued to pour his own money into the
business to keep it afloat.  Debtor testified to this fact at the meeting of creditors on May 17,
2023. 6: 26-28–7:1-3.

**Reply:** Exhibit "C" to the Response purports to show, without any declaration in

support, a page printed from https://secure.sbcity.org/websearch/. Even if that is a true and

correct representation of records held by the City of San Bernardino, those records are not San

Bernardino County *fictitious business name registrations* ("FBNs"). Rather, they are City of

San Bernardino *business licenses*. This Court can decide for itself the likelihood that the City of

San Bernardino requires that any applicant for a business license must provide a copy of an

FBN registration that matches the business license application, and that all personal names

mentioned on the former must appear on the latter. The Response offer no evidence of this.

     The actual San Bernardino County FBN registration for E Street Market appears at

https://arcselfservice.sbcounty.gov/web/document/DOC865S2043?search=DOCSEARCH184S
2, downloaded by Roberts on 5/29/2023:



(The image is split to fit on one page without creating excessive white space.)

     That record shows E Street Market to be a "copartnership" with Najed Saker (see the

last line in the screenshot), not an FBN of the debtor Jihad Saker alone. Roberts has searched

but not found the name "Najed Saker" in Jihad Saker's bankruptcy schedules. Nor did Najed

Saker announce his presence at either of the 341 meetings.

Moreover, DE #11, a set of 3/28/2023 supplemental filings by Saker, contains statements that contradict the representations in the Response and the filings with the City and the County. In response to question 19 on page 7, "Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture", Saker answered "No". This conflicts with the FBN registration shown above.

It also conflicts with the answer given by Saker to question 42 on page 9 of DE #11, where Saker admitted ownership of "Any business-related property you did not already list" as "Saker Enterprises, Inc. DBA E Street Market". That latter statement, made under penalty of perjury, indicates that "E Street Market" was a fictitious business name, not of Saker, but of his corporation.

Thus, in no way do "these transfers show Debtor putting his own money into the business". But even if they did, taking substantial amounts of cash out of a business account naturally raises the question of what happened to all that cash (see below). Saker's statements at the 341 meeting do not properly account for those amounts.

All of this appears to constitute possible bankruptcy fraud, or at least incomplete disclosures and another way in which Roberts has been deprived of a "speedy and inexpensive" opportunity to fully explore Saker's financial condition. His apparent business partner could be expected to have knowledge of what happened to all that cash, but was not disclosed amidst the gameplaying and inconsistencies about the actual structure and ownership of Saker's business.

*5. The Response Presents Unsupported Conclusory Statements by Counsel*

**Response:** "[A]ll transfers were allowable or done within the ordinary course of business." 7:21-22.

**Reply:** So says counsel. Arguments of counsel are not evidence. The above conclusory statement is unsupported by specific facts or any declaration. And there are many other examples of such unsupported conclusory statements in the Response.

Even if the cash withdrawals were technically "allowable" and Saker was running his business such that such withdrawals were "within the ordinary course," that still doesn't explain what happened to all that cash. When asked by Roberts about the purpose of the 3/25/2021 withdrawal of $8,510 in cash, Saker stated that it was "for refrigerator maintenance" including "$2000 for wires alone." When asked by Roberts "Can you provide me with the names of the people or companies you paid all this money to?" (referring to a total of more than $20,000) Saker responded essentially, "As Arabs, we call specialist individuals; we avoid companies because we don't trust them," but he did not remember these individuals' names, nor apparently did he get any receipts.

*6. The Response Assigns Unjustified Meaning to the Report of No Distribution*

**Response:** "After that meeting, trustee Cisneros filed a Ch 7 Trustee's Report of No Distribution.." 2:24-25.

---

REPLY IN SUPPORT OF MOTION FOR DISMISSAL

**Reply:** The Response implies that the Trustee's issuance of a Report of No Distribution resolves the issues about which Roberts has complained in his Motion. That is not true, even if the Report itself is correct. But it very well might not be.

Everett L. Green, counsel for the US Trustee, attended the continued 341(s) meeting on May 17. He found Roberts' evidence as to suspicious transactions compelling, such that his last statement on the call to Saker was "Our office will submit a request for bank statements of companies that you owned or operated." This is according to Roberts' manual, contemporary transcription typed into his computer immediately after that statement by Mr. Green. Roberts represents here, under penalty of perjury, that that is what was stated by Mr. Green.[1]

Roberts was shocked to see the Report of No Distribution being issued the very same day that the US Trustee stated in the 341 meeting that he would be requesting more documents. Shouldn't the Bankruptcy Trustee have waited for those documents to be produced, *and inspected them*, before making such a decision? Now that he has painted himself into a corner,

---

[1] Roberts tried to obtain the recording of the 341(a) meeting. In the past he has been able to get the US Trustee's office to send him recordings via email. However, the recording of the 341 meeting in this case would be too long for that. He was told by a paralegal for the US Trustee's office that there is a three- to seven-day turnaround time for putting recordings onto CDs, and Roberts cannot currently afford to pay a court reporter to generate a transcript anyway. Roberts does not understand why the recordings are not immediately made available to the staff of the US Trustee's office and made accessible to them throughout the District, or even on the Internet. Creditor's Meetings are public. Simply posting the recordings on the Internet would support the "speedy and inexpensive" resolution of legal disputes.

REPLY IN SUPPORT OF MOTION FOR DISMISSAL

11

he will be far less likely to file any new report admitting to the existence of assets, or take any other adverse action against Saker, because doing so would show that his previous Report was premature. Nor will Roberts be in a position to benefit from the document request by the US Trustee's office, since it will not provide him with the documents.

Roberts' experience in several bankruptcy adversary proceedings—in addition to what he has been told by creditors and creditor attorneys with experience in this bankruptcy district—is that Bankruptcy Trustees virtually never exert themselves to exhibit a proper distrust of bankruptcy debtors pursuant to 11 USC 704(a)(4). One of them did get her hand slapped by the US Trustee for failing to provide Roberts with documents as required and canceling a previously continued 341 meeting. Ex. 2, p. 3, "Conclusion". But by then it was too late – the horse had already run far from the barn.

The evidence that Roberts provided to the Bankruptcy Trustee in this case several weeks before the continued 341(a) meeting should have persuaded that Trustee to request the withheld bank statements well before the continued 341(a) meeting. Instead, only the *US* Trustee did so, and only at that *continued* meeting. During the week previous to this filing, Roberts requested by telephone that the US Trustee's office provide him with copies of the document demand and any responses. He was told by whoever answered the phone that the US Trustee's office "does not do that".

Accordingly, the government entity responsible for ensuring that Bankruptcy Trustees fulfill their duties under 11 USC 704, including subsection (a)(7)—"(7) ...furnish such information concerning the estate and the estate's administration as is requested by a party in interest"—takes the position that it is in no way required to comply with that subsection. That may well be true. But why would the US Trustee never *voluntarily* comply with it?

The refusal to produce records from Saker's corporate account has left Roberts unable to demonstrate the retention or dissipation of assets from that other account. Nothing in the Response explains why Saker felt the need to maintain one account in the actual corporate name and another account in its fictitious business name. It is not because E Street Market is a fictitious business name of Saker himself (even if it were such a name). Saker maintained a personal checking account at Arrowhead Credit Union, in addition to the Wells Fargo Bank where he maintained the *two business accounts.*

*7. The Response Fails to Comply with Many Key Rules*

As demonstrated by the above sections, the Response violates several substantive rules intended to ensure the integrity of the litigation process. In addition there were some procedural violations:

No notice was given of when Roberts' reply is due (violation of LBR 9013-1(f)(2)):

> "The Response must advise the adverse party that any reply must be filed with the court and served on the responding party not later than 7 days prior to the hearing on the motion."

REPLY IN SUPPORT OF MOTION FOR DISMISSAL

13

No declaration accompanied the Response (violation of LBR 9013-1(f)(2) and 9013-1(i)):

**"(2) Contents of Response.** A Response must be a complete written statement of all reasons in opposition thereto or in support, **declarations..."**

"**Evidence on Motions, Responses to Motions, or Reply.** Factual contentions involved in any motion, opposition or other response to a motion, or reply, must be presented, heard, and determined upon **declarations** and other written evidence."

Roberts, on the other hand, *did* submit with his Motion, under penalty of perjury,

evidence of Saker's suspicious transfers and hiding of transactions, authenticated through his

sworn declaration.

The Response also violates:

**"California RPC Rule 3.1 Meritorious Claims and Contentions -** (a) A lawyer shall not: (1) bring or continue an action, conduct a defense, assert a position in litigation, or take an appeal, without probable cause and for the purpose of harassing or maliciously injuring any person;* or / (2) present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by a good faith argument for an extension, modification, or reversal of the existing law."

**"California RPC Rule 3.3 (Candor Toward the Tribunal—**(a) A lawyer shall not:  (1) knowingly make a false statement of fact or law to a tribunal...)"

**"California RPC Rule 4.1 Truthfulness in Statements to Others -** In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person..."

Saker's entire bankruptcy filing, including the Response to Roberts' Motion, was brought

with assistance of counsel in violation of this additional rule:

**California RPC Rule 3.2 Delay of Litigation -** In representing a client, a lawyer shall not use means that have no substantial* purpose other than to delay or prolong the

proceeding or to cause needless expense."

Roberts' Motion clearly explained why Saker's entire bankruptcy filing causes needless expense. A reasonable consolation offer in compromise by Saker would not have been rejected by Roberts. And it still would not be. But the Response has doubled down on the "needless expense," leaving Saker and his family with less money to offer Roberts and through him, the bereaved mothers, Debbie Lawler and Cynthia Johnson.

## C. CONCLUSION

The possible existence of undisclosed assets is secondary to all the other factors that weigh in favor of granting Roberts' Motion: unreasonable and prejudicial delay, unclean hands, judicial economy, and the foundational requirement to interpret all codes in the light of the public policy favoring the speedy, inexpensive, and just resolution of legal disputes. The Debtor's utterly deficient and falsehood-laden Response, filed in violation of so many rules, has only made Saker's hands—and those of his attorney agent—even dirtier than they already were.

Roberts is not asking this Court to find Saker in contempt. He is only asking this Court to dismiss the improper and unjustified request for bankruptcy protection, so that the promised mediation can proceed the way it was supposed to proceed in the first place, with Saker's cards face up on the table, and with the possibility of state court contempt hanging in the balance, exactly as it should. This Court has the authority to grant Roberts' motion even if, in the Court's judgment, Roberts has not brought forth fully sufficient arguments to justify it. This Court has a

duty to ensure the integrity of the bankruptcy process and to see that relief is granted only to honest but unfortunate debtors. This Court also has the authority to guard its resources against wasteful litigation and to craft equitable relief.

This Reply together with the Motion itself provide good cause for the Court to grant the Motion and dismiss Mr. Saker's bankruptcy case.

Respectfully submitted this 1st day of June, 2023.

_____

Gregg Roberts

Assignee of Record / Judgment Creditor

# Declaration of Gregg Roberts

Gregg Roberts
43430 E Florida Ave Ste #F-293
Hemet CA 92544
951-330-4450
gregg@legalsupport-sc.com
Assignee of Record and Judgment Creditor, Pro Se

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION

In re Jihad Saker,

Debtor

Case No.: 6:23-bk-10976-SY
Chapter 7

## DECLARATION OF GREGG ROBERTS

I am over the age of 18 years and competent to make this Declaration. I have personal knowledge of the matters herein, other than those indicated as being known by information and belief, and I would and could competently testify about them if called to do so.

All facts stated in this Motion are true and correct, to the best of my knowledge, information, and belief. I believe that the Reply is written clearly enough to enable this Court to determine which facts Roberts has personal knowledge of, and which ones are presented on information and belief, and on what facts or documents the latter are based. Roberts again respectfully requests that the Court accept this somewhat generic version of a Declaration.

Otherwise Roberts would have to take the time to copy and paste facts out of the Reply specifically attesting to each fact. Roberts had to prepare for and attend a hearing in another major case the day before the filing deadline of this Reply. Roberts will be happy to answer, at the hearing, any questions that the Court might have on this issue.

All exhibits to this Motion are true and correct copies of the documents that they purport to be.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Signed at Hemet, California, this 1st day of June, 2023.

*Gregg Roberts*

Gregg Roberts, Assignee of Record / Judgment Creditor

DECLARATION OF GREGG ROBERTS
2

# Exhibit 1

# HEARINGS

☑ **Show Vacated**

Show
25 ⌄
entries

Filter:

| Department | Judge | Court Reporter | Type | ▼ Date | Time |
|---|---|---|---|---|---|
| Department S27 - SBJC | Garza, Thomas S | | Status Conference | 3/8/2023 | 8:30A |
| Department S27 - SBJC | Garza, Thomas S | | Ex Parte Hearing - Predisposition *FOR AN OSC WHY THE JUDGMENT DEBTOR SHOULD NOT BE HELD IN CONTEMPT; PAS; DECLARATION; ORDER* | 1/6/2023 | 8:30A |
| Department S27 - SBJC | Garza, Thomas S | | Status Conference *potential settlement* | 12/23/2022 | 8:30A |
| Department S27 - SBJC | Garza, Thomas S | | Status Conference | 9/26/2022 | 8:30A |
| Department S27 - SBJC | Garza, Thomas S | | Ex Parte Hearing - Predisposition *IN SUPPT OF TECHNICAL AMENDMENTS TO THIS COURTS' LAST TWO ORDERS; WITH POINTS & AUTHORITIES, DECLARATION AND PROPOSED ORDERS* | 8/3/2022 | 9:00A |

**Ex. 1, p. 1 of 2**

| Department | Judge | Court Reporter | Memo | Document Type | Date | Time |
|---|---|---|---|---|---|---|
| Department S27 - SBJC | Garza, Thomas S | | | Motion to Set Aside<br>*Notice of motion and motion to set aside default and default judgments;Supporting declarations of Terence Bortnick, Michelle Mejia, and Corey E. TaylorFiled by defendant Argent Retail Advisors, Inc on complaint filed 5/10/16* | 7/26/2022 | 8:30A |
| Department S27 - SBJC | Garza, Thomas S | | | ORAP -- Examination of Judgment Debtor | 7/19/2022 | 8:30A |
| Department S27 - SBJC | Garza, Thomas S | | | ORAP -- Examination of Judgment Debtor<br>*Counsel's request* | 4/20/2022 | 8:30A |
| Department S27 - SBJC | Garza, Thomas S | | | Ex Parte Hearing - Predisposition<br>*Forthwith processing of Writs and other papers.* | 4/13/2022 | 9:00A |
| Department S27 - SBJC | Garza, Thomas S | | | Ex Parte Hearing - Predisposition<br>*FOR TURNOVER DELIVERY OF PROPERTY PROTECTIVE ORDER ORDER TO COMPEL PRODUCTION OF DOCUMENTS AND EXTENSION OF LIEN; MEMO OF PA'S; DECL OF GREGG ROBERTS; AND PROPOSED ORDER* | 3/24/2022 | 9:00A |
| Department S27 - SBJC | Garza, Thomas S | | | ORAP -- Examination of Judgment Debtor | 2/1/2022 | 8:30A |

**Ex. 1, p. 2 of 2**

# Exhibit 2



**U.S. Department of Justice**

*United States Trustee*
*Central District of California*

---

*411 W. 4th Street, Suite 7160*
*Santa Ana, CA 92701*
*Telephone: (714) 338-3400*
*Facsimile: (714) 338-3421*

May 3, 2022

Gregg Roberts
Legal Support Services of Southern California
43430 E. Florida Ave. #F-293
Hemet, CA 92544

Re: *In re Louie Russell Vega and Patricia Anne Vega*, Case No. 8:21-bk-12746-ES

Dear Mr. Roberts,

I am writing in response to your faxed communication dated January 28, 2022, concerning the conduct of Weneta Kosmala, Chapter 7 trustee, and her administration of the bankruptcy case of Louie Russell Vega and Patricia Anne Vega Duane. The United States Trustee Program is the component of the Department of Justice responsible for supervising the administration of bankruptcy cases and private trustees under title 11 of the United States Code. As part of the Program's supervision, the United States Trustee independently reviews public complaints concerning trustee's conduct and evaluates whether appropriate remedial action should be taken. To respond to your complaint, the United States Trustee reviewed the record of this case, including, but not limited to, information you provided, the court's docket and legal pleadings filed in the case and the related adversary proceeding, official recordings of the first meeting of creditors under §341 of the Bankruptcy Code, and information received from trustee Kosmala and Debtors' counsel, Christopher Walker, concerning facts pertinent to the issues you raised.

On November 19, 2021, Louie Russell Vega and Patricia Anne Vega Duane (collectively, the "Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, Santa Ana division (the "Bankruptcy Case"). The Bankruptcy Case was assigned case no. 8:21-bk-12746-ES. Upon the filing of the petition, Weneta Kosmala was appointed as the interim Chapter 7 trustee. Since no trustee was elected at the Debtors' initial meeting of creditors, trustee Kosmala became the permanent trustee for the Bankruptcy Case.

Your complaint raises concerns about trustee Kosmala's conduct in administering the Bankruptcy Case. Specifically, you allege that she scheduled and then cancelled a continued §341

1

**Ex. 2, p. 1 of 3**

meeting of creditors without providing you with documentation requested or the opportunity to participate in the continued meeting. You also advised us that cancellation of the continued §341 meeting shortened the time to object to exemptions which derogated your ability to analyze and possibly object to the Debtors' scheduled exemptions. You further indicate that Ms. Kosmala did not comply with your request for certain documents that the Debtors provided to her.

The initial §341 meeting in the Bankruptcy Case was duly noticed and conducted by trustee Kosmala via Zoom on December 22, 2021. During the initial meeting, the trustee examined the Debtors and requested documents, and then continued the meeting to January 20, 2022. Notice of the continued meeting appears on the court docket. (docket nos. 10 and 11) The §341 recording for the initial meeting indicates that you spoke with trustee Kosmala after she had concluded the meeting and advised her that you were present but did not ask questions because she ended the meeting without asking if there were creditors present with questions. The recording also indicates that you told trustee Kosmala about several potential estate assets you wanted to investigate. You advised her that you wanted to confirm with your sources before conducting a Rule 2004 exam of the Debtors and trustee Kosmala asked you to let her know the results of your investigation.   On January 19, 2022 (the day before the continued meeting), trustee Kosmala's administrator notified Debtors' counsel that the trustee had no further questions for the Debtors and that the continued §341 meeting set for January 20, 2022, was cancelled.

Ms. Kosmala filed a no asset report on January 24, 2022. The Debtors' counsel has advised us that you told him that you intended to conduct a Rule 2004 exam of the Debtors in early February but never obtained an order authorizing the exam and it did not go forward. Instead, you filed an action seeking an exception of discharge of your debt under Bankruptcy Code §523 on February 22, 2022, and that action is pending (*Gregg Roberts v. Louie R. Vega and Patricia Anne Vega*, 8:22-ap-01023).

Among the documents you provided to us are several emails from you to trustee Kosmala's administrator and Debtors' counsel (dated 12/27/21, 1/12/22 & 1/18/22) indicating that you intended to participate in the second §341 meeting and also planned to conduct a Rule 2004 exam. There is also an email (dated 12/22/21) from trustee Kosmala's administrator acknowledging that the §341 meeting was continued for two reasons: to give the Debtors time to provide documents and due to difficulties with the Zoom technology, the initial meeting was concluded before the trustee and you were aware of each other. The trustee's administrator specified in his email that "as such, [you]  will also have an opportunity to appear on January 20, 2022, to question the Debtor re potential assets (if any)." The January 21, 2022, email, which you sent to trustee Kosmala's administrator Mr. Fitzgerald, asked for reinstatement of a continued §341 meeting and whether the trustee received documents confirming the Debtors' rent, which can be shared with you. You indicated that the Debtors would not provide information regarding rent and an inheritance directly to you. On the same date Mr. Fitzgerald responded to you via email, indicating that he was forwarding your request to the trustee.

Trustee Kosmala advised us that she confirmed that there was no basis to administer non-exempt property based on her investigation, which included a review of information she received from the Debtors. Her investigation supported a conclusion that non-exempt assets were valued at $3,281.47, which would not provide a meaningful distribution to creditors in light of

2

**Ex. 2, p. 2 of 3**

administrative costs; it also appears that the Debtors only scheduled a $20,000 wildcard exemption and had the ability to amend their schedules to increase this to $30,825 under section 703.140(b)(5) of the California Code of Civil Procedure if their assets were more valuable than scheduled.

### Conclusion

Our investigation confirms that trustee Kosmala properly examined Debtors' claimed exemptions before filing a no-asset report and properly concluded that there was no basis for a challenge that could result in assets that could be distributed to creditors. However, our review leads us to believe that, under the circumstances of this matter, trustee Kosmala should have provided you with documents she had received from the Debtors and the opportunity to examine the Debtors at a continued §341 meeting of creditors. Accordingly, we will carefully review her administrative procedures to assure that this practice does not continue. With respect to your ability to conduct discovery to support your §523 action, the Bankruptcy Rules allow you to conduct discovery and obtain the information you need directly from the Debtors.

Thank you for bringing this matter to our attention. My staff and I will continue to monitor the Bankruptcy Case.

Very truly yours,

Peter C. Anderson
United States Trustee for Region 16

3

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
~~43430 E. Florida Ave. #F, Hemet CA 92544~~ *RB 601 N. Kirby St spc 81 Hemet CA 92545*

A true and correct copy of the foregoing document entitled (*specify*): __Reply in Support of Motion for Dismissal;__
__Declaration of Gregg Roberts; and two exhibits__

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

   I have no access to CM/ECF.

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __05/31/2023__, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
   All via FedEx Next Business Day: Debtor Counsel: Amanda Billyard, Financial Relief Law Center, 1200 Main St, Ste C, Irvine, CA 92614-6749; Debtor: Jihad Saker, 1137 W. 17th St., San Bernardino, CA 92411; Hon. Scott Yun, United States Courthouse, 3420 Twelfth Street, Ste 345 / CR 302, Riverside, CA 92501-3819.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

__05/31/2023__     *RON BLANCHARD*           *[signature]*
   Date             Printed Name                Signature

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                    **F 9013-3.1.PROOF.SERVICE**